**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Oscar Emilio HENAO and Ernesto Henao, Defendants-Appellees.**

No. 80–5145.

United States Court of Appeals, Fifth Circuit. Unit B

Aug. 7, 1981.

James McMaster, Sonia O'Donnell, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellant.

G. David O'Leary, Miami, Fla., for Oscar Emilio Henao.

Before GODBOLD, Chief Judge, FRANK M. JOHNSON, Jr., and ANDERSON, Circuit Judges.

GODBOLD, Chief Judge:

Defendants were charged with transporting illegal aliens, 8 U.S.C. § 1324, and conspiracy to do the same, 18 U.S.C. §§ 2 and 371. The district court dismissed the indictment on the theory that the government had violated the defendants' rights under the Sixth Amendment to access to a witness.

November 13, 1979 defendant Oscar Henao was arrested at an airport in Dade County, Florida after allegedly piloting from that airport a small airplane in which three allegedly illegal aliens were passengers, Gloria, Dora, and Dora's two year old child Lina. The following day immigration officials set a $1,000 bond for Dora requiring that she appear at an immigration hearing to be held November 23. The same day Gloria was brought before a United States magistrate by an agent of the border patrol who filed a material witness complaint against her and requested that a bond be set requiring her appearance in the proceedings against Oscar. The court set bond at $5,000.

Bond was posted for Dora and she and her child were released. Dora did not appear for her immigration hearing and her bond was forfeited. Up to the time the indictment was dismissed she was not found.

Oscar and his brother Ernesto were indicted December 5. Defendants say in their brief that they sought to interview Dora. Presumably the U. S. attorney asked the border patrol her whereabouts. The border patrol advised that Dora and her child had been deported to Colombia, South America, and were unavailable for further proceedings, and the U. S. attorney gave this information to the court and to defense counsel.

In mid-January the U. S. attorney was advised that Dora and her child had not been deported but had skipped. The government notified immigration officials in Chicago, and an unsuccessful effort was made to locate Dora in that vicinity. The government promptly gave this information to defense counsel who then filed a motion to dismiss the indictment. After two continuances to give the government further opportunity to try to locate the missing Dora, and an amendment of the indictment, the court dismissed the indictment without prejudice. The court made no finding of the character of the government's conduct beyond referring to it as "inadvertent error." There is no evidence that it was anything other than a routine mix-up.

■ Defendants contend there was a violation of the Sixth Amendment, which guarantees a defendant the right to compulsory process for attendance of witnesses.[1] To make this right fully meaningful it has been extended to proscribe the government's making a witness unavailable and thereby preventing a defendant from interviewing the witness and determining whether he will subpoena and call the witness in his defense. Thus, the government may not deny the defendant access to a witness by hiding him out. *See e. g. Freeman v. Georgia*, 599 F.2d 65 (5th Cir. 1979), *cert. denied* 444 U.S. 1013, 100 S.Ct. 661, 62 L.Ed.2d 641 (1980) (police detective concealed whereabouts of witness); *Lockett v. Blackburn*, 571 F.2d 309 (5th Cir.), *cert. denied* 439 U.S. 873, 99 S.Ct. 207, 58 L.Ed.2d 186 (1978) (prosecutor sent informants to Florida six days before trial). *See also U. S. v. Opager*, 589 F.2d 799 (5th Cir. 1979) (government refused to provide informant's address despite three court orders to do so); *U. S. v. Pollard*, 479 F.2d 310 (8th Cir. 1973) (government required to expend "every reasonable effort" to locate informant subpoenaed by defendant); *U. S. ex rel. Almeida v. Baldi*, 195 F.2d 815 (3d Cir. 1952), *cert. denied* 345 U.S. 904, 73 S.Ct. 639, 97 L.Ed. 1341 (1953) (state deliberately concealed exculpatory witness and physical evidence). *Cf. Singleton v. Lefkowitz*, 583 F.2d 618 (2d Cir. 1978), *cert. denied* 440 U.S. 929, 99 S.Ct. 1266, 59 L.Ed.2d 486 (1979) (state required to use best efforts to locate witness improperly released after being arrested on material witness warrant issued at request of

---

1. Many of the witness unavailability cases are approached on due process grounds.

defendant); *U. S. v. Morrison*, 535 F.2d 223 (3d Cir. 1976) (prosecutor intimidated witness into refusal to testify); *U. S. v. Smith*, 478 F.2d 976 (D.C.Cir.1973) (same); *Bray v. Peyton*, 429 F.2d 500 (4th Cir. 1970) (same); *Gregory v. U. S.*, 369 F.2d 185 (D.C.Cir. 1966) (prosecutor instructed witnesses not to talk to defense counsel except in his presence).

A series of other cases have dealt with the government's making an alien witness unavailable by deporting him before the defendant can interview him. The Ninth and Seventh Circuits have held that this violates the defendant's constitutional rights. *U. S. v. Calzada*, 579 F.2d 1358 (7th Cir.), *cert. denied* 439 U.S. 920, 99 S.Ct. 294, 58 L.Ed.2d 266 (1978); *U. S. v. Tsutagawa*, 500 F.2d 420 (9th Cir. 1974); *U. S. v. Mendez-Rodriguez*, 450 F.2d 1 (9th Cir. 1971). In *U. S. v. Avila-Dominguez*, 610 F.2d 1266 (5th Cir. 1980) we agreed with the general principle of these cases involving government deportation of a witness, but we did not agree that automatic reversal of a conviction or dismissal of an indictment is required without any showing of prejudice to the defendant. However, we set a very low threshold for prejudice. The defendant need not show prejudice "with any degree of assuredness." *Avila-Dominguez* at 1269. We said, quoting from the Ninth Circuit, that "it does not seem too much to require that [defendants] offer at least a plausible theory" of how the testimony of the witnesses would be helpful to the defense. We said that at a minimum counsel must make "some suggestion * * * as to how the deported witnesses might advance the cause of revealing the truth." *Id.* at 1270. Later, in *U. S. v. Arredondo-Morales*, 624 F.2d 681 (5th Cir. 1980), we applied the rule requiring a showing of prejudice.

■ If defendants get over the minimum threshold of prejudice that we require they barely do so. Our decision is not, however, based on lack of prejudice but upon a conclusion that the government's conduct in this case does not rise to the level of a constitutional violation. It is not contended that the government deported Dora but only that it erred in telling the defendants that she had been deported. The coincidence that the erroneous information used the word "deported" and that much of the case law involves deportation threw the parties and the district court off the track. The "hiding out" and deportation cases involve governmental actions that of themselves make the witness unavailable—the government hides the witness or the government ships the witness out of the country and thereby does injury to the defendant's ability to prepare and present his case. The salutary cases that hold these actions by the government violative of constitutional rights do not sweep in every governmental act that in some "but for" sense contributes in some manner to unavailability of a witness. We would not dismiss an indictment because, in an automobile accident unrelated to the case, a governmental agent unintentionally killed a witness.

■ Moreover, defendants do not really assert that the government made the witness unavailable in the sense of the deportation cases but rather that they were caused to think the witness was unavailable. They argue that once the government told them Dora was gone they did not make any efforts to find her because they were entitled to, and did, rely on what the government had told them. In this factual context, where the government neither deported Dora, nor made her unavailable, nor concealed her, nor acted with improper motives, but gave the defendants erroneous information that caused them not to search for her, the district court shifted the obligation to the government to find Dora and produce her and, when it could not, dismissed the indictment. That the government's error involved the word "deported" is coincidental. The district court's approach is actually unrelated to deportation, and not limited to government error concerning deportation, but would apply as well to the government's erroneously telling the defendants that the witness had gone to France or had been killed in an accident. Under this approach, if the defendants re-

lied on the statement and concluded they need not try to find the witness the indictment would be dismissed unless the government could find the witness and produce him for the defendants.[2]

In many factual contexts, proceeding carefully on a case-by-case basis, the courts have rejected efforts to extend the deportation cases to situations in which a potential deportee (or simply an alien) has become unavailable as a witness and the government in some "but for" sense has caused or contributed to the unavailability. *U. S. v. Gonzales*, 617 F.2d 1358 (9th Cir.), *cert. denied*, —— U.S. ——, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980) (government merely released an alien witness from custody and neither deported him nor caused him to leave the jurisdiction); *U. S. v. Lomeli-Garnica*, 495 F.2d 313 (9th Cir. 1974) (government released a legally admitted alien from confinement and he returned at once to Mexico); *U. S. v. Hernandez-Gonzalez*, 608 F.2d 1240 (9th Cir. 1979) (alien secured release by border patrol by impersonating another alien who was qualified to be voluntarily returned to Mexico). Even where the government has permitted witnesses to become unavailable by allowing them to voluntarily return to Mexico for humanitarian reasons no constitutional violation has been found. *U. S. v. Avila-Dominguez, supra* (woman alien and two children granted voluntary return to Mexico because of the inadequacy of detention facilities). *See also U. S. v. Carrillo-Frausto*, 500 F.2d 234 (9th Cir. 1974) (magistrate refused to remand two juvenile aliens to custody because of the unavailability of detention facilities and they became unavailable as witnesses).

No case suggests, and the applicable policies do not command, that the government be a guarantor of information that it gives about the whereabouts of witnesses, on peril of having the indictment dismissed if the information turns out to be erroneous. Whether the district court wishes to impose a penalty on the government for giving incorrect information in complying with pre-trial procedures or in violation of local rules is a matter that does not rest upon constitutional grounds and is not presented by this case.

REVERSED and REMANDED.

---

2. A different case would, of course, be presented if the defendants were given erroneous information in bad faith.