**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Richard COLLINS, John Charles Chaplin, Robert Wells, Defendants-Appellants.**

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Michael RICHARDSON, Defendant-Appellant.**

Nos. 84–5472, 84–5499.

United States Court of Appeals, Eleventh Circuit.

Jan. 14, 1986.

---

William P. Cagney, III, P.A., Miami, Fla., Sheryl J. Lowenthal, Coral Gables, Fla., for R. Collins.

Bennie Lazzara, Jr., Tampa, Fla., for J. Chaplin.

Douglas L. Williams, P.A., Miami, Fla., for R. Wells.

Joel Hirschhorn, P.A., Miami, Fla., for M. Richardson.

William Norris, Asst. U.S. Atty., Miami, Fla., plaintiff-appellee.

Before HATCHETT and CLARK, Circuit Judges, and ALLGOOD *, District Judge.

HATCHETT, Circuit Judge:

Appellants urge reversal in this multi-thousand pound marijuana importation case on a multitude of grounds, including denial of assistance of counsel, sentencing errors, admissibility of evidence, double jeopardy, and prosecutorial misconduct. We affirm.

## FACTS

The Drug Enforcement Administration conducted a two-year undercover drug investigation in Collier County, Florida, code named "Operations Everglades." During the investigation, agent William J. Segarra masqueraded as Willie Santos, a marijuana smuggler. At various times other undercover agents assisted him.

On April 11, 1983, at the invitation of Ancile Levi Dupree, Segarra held meetings and made arrangements to provide a shrimping boat to receive 30,000 pounds of marijuana from a freighter off the Yucatan Peninsula in the Gulf of Mexico and to transport it to shore. Participants in the meetings also discussed a separate load of 10,000 pounds of marijuana. Five persons, other than government agents, attended meetings held to plan the transportation of the marijuana. These persons were Ancile Levi Dupree, Richard Collins, Robert W. Wells, John Chaplin, Michael Richardson, and Kelvin Townsend. During the course of the meetings, the participants agreed that Segarra's boat, the "Yellow Fin," would be called the "Barracuda." The freighter with the marijuana would be called the "Blue Runner," and the base station would be called the "Flying Fish."

The listed participants held the meetings listed below:

| April 11, 1983 | Dupree/Segarra (Dupree asks Segarra to provide boat to haul 30,000 pounds of marijuana and says that his people are willing to pay $700,000 for use of the boat.) |
| April 12, 1983 | Dupree/Segarra/Collins/Wells (Segarra tells Dupree his people have agreed to pay $750,000; Wells describes Collins as principal planner on the 30,000-pound load and himself as principal planner on the 10,000-pound load, but describes group as working together.) |
| April 12, 1983 | Dupree/Segarra |
| April 15, 1983 | Dupree/Segarra |
| April 18, 1983 | Dupree/Segarra/Wells (Wells describes shrimper as satisfactory.) |
| May 3, 1983 | Dupree/Wells/Collins/Segarra/Valazco (Wells tells Segarra that Dupree has been looking for him and suggests they talk; Dupree in conversation with Segarra describes need for shrimper as immediate and Collins says it is needed "yesterday.") |
| May 3, 1983 | Segarra/Valazco/Dupree/Collins/Townsend/Richardson (Richardson delivers manila envelope; later, Dupree, Segarra, Valazco, and Collins open an envelope and Collins says, "Here is the $30,000.") |
| May 4, 1983 | Dupree/Segarra/other agents (Dupree inspects and approves boat.) |
| May 5, 1983 | Segarra/Dupree (Dupree gives Segarra charts, radio frequencies, and codes.) |
| May 9, 1983 | Segarra/Collins (Collins describes himself as busy with the 10,000-pound load.) |
| May 11, 1983 | Dupree/Townsend/Richardson/Segarra (Discussion of communications difficulties between Segarra's boat and the "Flying Fish" and promise of additional $10,000 by Townsend in expense money upon transfer of the load.) |
| May 13, 1983 | Segarra/Richardson/Chaplin (Chaplin introduces himself as "Flying Fish," describes communication difficulties, and describes the "Blue |

* Honorable Clarence W. Allgood, U.S. District Judge for the Northern District of Alabama, sitting by designation.

| | |
|---|---|
| May 19, 1983 | Runner" as preparing to head back south.) |
| | Townsend/Dupree (Townsend tells Dupree boat was busted and requests that Dupree obtain refund from Willie Santos of some of the $30,000 expense money that was advanced.) |

From May 6 to May 10, special agent Rene Gonzalez traveled on the "Yellow Fin" from Panama City, Florida, and attempted to establish communication with the contact boat off the Yucatan. On May 10, he returned to Panama City after failing to establish contact. On May 13, 1983, acting on information provided by agent Pulley, the United States Coast Guard stopped and boarded a vessel, the "AVCOG6," containing 30,000 pounds of marijuana. The Coast Guard seized the vessel and the contraband, and took the vessel and its occupants to Key West.

On June 30, 1983, a four-count indictment was returned against Richardson, Townsend, Wells, Collins, Dupree, and Chaplin. The indictment charged in Count I, conspiracy to possess with intent to import marijuana into the United States; in Count II, conspiracy to possess with intent to distribute marijuana; in Count III, attempted importation of marijuana; and in Count IV, aiding and abetting the possession of marijuana with intent to import marijuana into the United States. Pursuant to a plea agreement, Dupree received a sentence of probation in exchange for his testimony. Following a jury trial, the other defendants, except Chaplin, were found guilty as charged; the jury acquitted Chaplin on Counts I and II, the conspiracy counts.

## ISSUES

Collins, Wells, Chaplin, Richardson, and Townsend, the appellants, raise a variety of issues, which we have grouped under eight headings. Except for Richardson and Townsend, whose motions were denied, each appellant has adopted by reference the contentions of the others, where applicable.[1]

### Collins's Ability to Assist his Counsel

Defendant Richard Collins suffered from a long-standing severe back problem. The trial court continued the original trial date of March 27, 1984, after receiving an affidavit from Collins's physician describing a conservative treatment plan intended to avoid the necessity for a myelogram. The court denied Collins' motion for severance, but agreed to continue the trial until April 9.

On April 9, Collins notified the court that his physicians had recommended a myelogram. The court agreed that the myelogram should proceed the next morning (Tuesday). Collins's physician stated that he did not think Collins would have a problem in attending court by the next week.

Collins underwent the myelogram on Tuesday, April 10. The trial began on Wednesday, April 11.

Collins contends that his physical condition during the voir dire examination violated his fifth and sixth amendment rights to be present at all stages of his trial and violated an understanding with the court that the trial would not begin until the next week. Collins argues that a myelogram causes debilitating headaches that can only be relieved by lying prone. Because at trial he was on a stretcher and in a prone position, Collins claims he could not see the jurors and was not in any meaningful sense present in the courtroom. Collins cites *Lewis v. United States*, 146 U.S. 370, 375–

1. Richardson and Townsend did not adopt their codefendants' arguments by reference in the body of their brief, as permitted by Rule 28(i), Federal Rules of Appellate Procedure. They submitted motions, which the court denied.

Although Townsend joined Richardson in submitting a brief, on September 9, 1985, Townsend submitted an agreed notice of voluntary dismissal of the appeal pursuant to Federal Rule of Appellate Procedure 42(b). Despite Townsend's absence from the case, we will discuss all issues raised in his and Richardson's brief, since other parties claim prejudice as a result of evidence admitted against Townsend.

76, 13 S.Ct. 136, 138, 36 L.Ed. 1011 (1892) for the proposition that a defendant has the right to bring peremptory challenges based upon his visual impression of a juror. Collins also maintains that his absence (some absences occurred when he occasionally dozed) did not arise from a voluntary waiver of a constitutional right in conformance with the standard of *Johnson v. Zerbst*, 304 U.S. 458, 464–65, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938).

We find these contentions to be without merit. No evidence shows that Collins had to be in the courtroom on a stretcher. The doctor's instructions were that if Collins experienced pain he should take a pill and lie down. In any event, Collins was present in the courtroom and heard the responses of the jurors.

■ This court has recently found that a defendant's absence from individual voir dire was not a violation of Rule 43(a), Federal Rules of Criminal Procedure, and even if error, it was harmless. *United States v. Willis*, 759 F.2d 1486, 1500 (11th Cir.1985). We find that Collins was not legally absent and the district court did not abuse its discretion in scheduling the trial after conducting an evidentiary hearing on Collins's ability to attend trial.

### Collins's Sentencing

Upon being found guilty, Collins entered Metropolitan Correctional Center (MCC), Miami, as a result of convictions in another case, pending sentencing in this case. Collins desired evaluation by a psychological expert to assist the trial court's exercise of sentencing discretion. The trial court refused to order MCC Miami to give a psychologist access to Collins. Collins contends that he could have received an ex parte order for psychological evaluation if he had been an indigent, and he could have obtained an evaluation if he had been free on bond pending appeal. Therefore, Collins concludes that he has been denied equal protection of the law. Additionally,

he argues that the implications of *Minnesota v. Murphy*, 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984), caused him not to make any statements at sentencing. In Collins's view, the combination of the lack of psychological evaluation and his inhibition at the sentencing hearing precluded counsel from providing effective assistance.

■ These contentions are without merit. Collins has not cited any authority requiring that a psychologist be admitted into a penal institution before sentencing. The district court has wide discretion to determine the information needed to "enable it to exercise its sentencing discretion in an enlightened manner." *United States v. Satterfield*, 743 F.2d 827, 840 (11th Cir. 1984). On the facts before us, Collins's recitation of an equal protection argument has no effect on the *Satterfield* standard.

### The Leon Dupree Testimony

■ Collins subpoenaed Leon Dupree to testify in his behalf, but the court refused to allow the testimony. Collins's use of Leon Dupree as a witness would have been to support the claim that Collins withdrew from the 30,000 pound conspiracy because he was busy with his work as a crabber and not because he was participating in the 10,000-pound deal. Collins's claim could have merit if no other witnesses could testify about the seasonal nature of crabbing work in the Everglades area. The record shows, however, that the defense called other witnesses. In addition, Collins elicited the facts on which he predicated his withdrawal defense from Levi Dupree on cross-examination. We also credit the government's suggestion that Collins's real purpose for wanting to call Leon Dupree was to impeach him and to bring other irrelevant matters into the trial.

The trial court acted within its discretion in refusing to allow Collins to call Leon Dupree.

### Instruction on Withdrawal

■ Collins requested an instruction to the jury on the defense of withdrawal from

the conspiracy. He now contends that the court should also have given an instruction on withdrawal from the substantive crime. The district court gave the jury the instruction on withdrawal from the conspiracy although the law of this circuit is to the contrary. Once the evidence showed that the conspiracy was complete, withdrawal was no longer legally possible from the completed crime of conspiracy. *United States v. Nicoll,* 664 F.2d 1308 (5th Cir. 1982).

■ Collins has cited no authority establishing that one can withdraw from the commission of a substantive offense. In addition, the evidence does not support Collins's claim that he carried the burden of showing that he "acted affirmatively to defeat or disavow the purpose of the conspiracy." *United States v. Wentland,* 582 F.2d 1022, 1025–26 (5th Cir.1978), *cert. denied,* 439 U.S. 1133, 99 S.Ct. 1056, 59 L.Ed.2d 96 (1979). In fact, Collins only contends that the evidence does not portray him as an active participant throughout the duration of the conspiracy and in the substantive crimes of which he was convicted. This contention is without merit.

### *Wells's Double Jeopardy Claims*

The government filed a separate indictment against Collins and Wells in connection with the alleged 10,000-pound load of marijuana. The district court in that case dismissed the conspiracy court on double jeopardy grounds, finding that separate indictments and trials for the two loads of marijuana charged the same conspiracy. Wells argues that the government should have charged one overall conspiracy and should not have split the conspiracy. This claim is without merit. The double jeopardy cases Wells cites are not on point. These cases concern the impermissibility of obtaining multiple convictions for overlapping conspiracies.

■ Wells also argues that the imposition of separate judgments and consecutive sentences for Counts I, III, and IV violate the double jeopardy clause of the fifth amendment. He makes two arguments. First, he argues that the government failed to introduce any evidence of his involvement in the alleged scheme after the April 18, 1983, meeting with Segarra. Thus, the proof of the attempt and aiding and abetting counts (III and IV) is the same as the proof under the conspiracy count (I). Wells argues that this is a factual merger of the substantive charges under *United States v. Hernandez,* 591 F.2d 1019 (5th Cir.1979). We disagree. Unlike the charges in *Hernandez,* the attempt and aiding and abetting counts require proof of different elements. The attempt count requires proof of (1) a specific intent to import marijuana into the United States and (2) a "substantial step" towards the importation. The aiding and abetting count, on the other hand, requires proof of (1) possession of marijuana (2) on board a vessel and (3) a specific intent to import marijuana into the United States. Count III, the attempt count, was proved by the facts relating to the "Yellow Fin." Wells was shown to have had the intent to import marijuana into the United States and to have made a substantial step towards the importation of the marijuana. We are bound by *United States v. Horsley,* 519 F.2d 1264, 1265 (5th Cir.1975). Under the *Horsley* test for "different evidence," convictions for separate offenses arising from a single fact pattern are upheld if each statute proscribing the conduct requires proof of different facts and different elements as to each separate offense.

Wells's second argument is that Wharton's Rule effects a merger of the conspiracy and the substantive charges. He offers no precedent from the Eleventh Circuit for the application of Wharton's Rule to Title 21 violations.

■ The basic idea of Wharton's Rule is that where a crime requires a plurality of agents for its commission, a charge of conspiracy cannot be used to impose a heavier

penalty. 2 F. Wharton, *Criminal Law* § 1604 p. 1862 (12th Ed.1932). The United States Supreme Court has held that Wharton's Rule has "current vitality only as a judicial presumption, to be applied in the absence of legislative intent to the contrary." *Iannelli v. United States*, 420 U.S. 770, 782, 95 S.Ct. 1284, 1292, 43 L.Ed.2d 616 (1975). The former Fifth Circuit did not generally favor Wharton's Rule, and it expressed doubt that it could ever be applicable to a conspiracy to distribute narcotics. *Curtis v. United States*, 546 F.2d 1188, 1190 (5th Cir.1977). The court summarily dismissed an argument that consecutive sentences for conspiracy and substantive counts violated double jeopardy protections in a footnote in *United States v. Archbold-Newball*, 554 F.2d 665, 685 n. 22 (5th Cir.1977). *See also United States v. Allen*, 724 F.2d 1556, 1558 (11th Cir.1984); *United States v. Cagnina*, 697 F.2d 915, 923 (11th Cir.1983).[2] We reject this contention.

### Sufficiency of the Evidence

Appellants attack the sufficiency of the evidence on several counts. First, Chaplin contends that the evidence is not sufficient to support a conviction for aiding and abetting the possession of marijuana with the intent to import it into the United States. The marijuana was aboard the AVCOG6 when it was seized on May 13, 1983. None of the appellants were on the AVCOG6. No evidence ever placed Chaplin on or near the AVCOG6.

Chaplin argues that the only evidence connecting him with any of the crimes is his participation with Segarra and Richardson in the meeting on May 13, 1983. At this meeting, Chaplin described communica-

tion difficulties encountered between Segarra's boat, the "Yellow Fin," and the base station, the "Flying Fish." Chaplin maintains that after the government spent a year and a half in Everglades City collecting evidence, one five-minute taped conversation about an unnamed ship somewhere in the Gulf of Mexico should not be sufficient to convict him of possessing marijuana with intent to import. He notes further that not only he, but no other appellant, has ever been shown to have had constructive possession of the marijuana on board the AVCOG6 and that it was on a course to Aruba when it was apprehended. Finally, Chaplin urges that his acquittal of the conspiracy charge eliminated the only legal theory upon which he could be held accountable for possession of the marijuana on the AVCOG6.

To prove a charge of aiding and abetting possession of contraband with specific intent, the government must introduce evidence connecting the defendant with both aspects of the crime: possession and intent to import into the United States. *United States v. Schwartz*, 666 F.2d 461, 463 (11th Cir.1982). In general, to be guilty of aiding and abetting, a defendant need only "associate himself with the crime, participate in it as something he wishes to bring about, and seek by his actions to make it succeed." *United States v. Pepe*, 747 F.2d 632, 665 (11th Cir.1984). Although the evidence against Chaplin is not extensive, the meeting on May 13th is damning. Chaplin introduced himself to Segarra as the "Flying Fish," the base station. In his conversation with Segarra, he reflected a complete understanding of the status of the criminal venture. Chaplin explained to Segarra that he

---

**2.** These holdings, except for *Curtis*, do not squarely reject Wharton's Rule contentions. In *Iannelli*, Justice Powell distinguishes double jeopardy concerns from the rationale of Wharton's Rule, which is a tool aiding statutory construction. 420 U.S. at 782, 95 S.Ct. at 1292. The distinction is not carefully maintained, however, and we see no reason to doubt the firm-

ness of this circuit's rejection of a mechanical application of Wharton's Rule to invalidate convictions of conspirators where a conspiracy involves more than two defendants. *Compare Curtis*, 546 F.2d at 1190 (1977) (closer scrutiny of legislative history would be necessary if conspiracy between one dealer and one consumer were charged).

had been talking with the "Blue Runner," the boat with the 30,000-pound load. This conversation is independent evidence that Chaplin associated himself with the attempt to offload the marijuana and participated constructively in the possession of the marijuana. It shows that he sought by his action as the communications base station "Flying Fish" to successfully convert the AVCOG6's possession of the marijuana into an importation into the United States. *See United States v. Pepe,* 747 F.2d at 665.

Second, Chaplin argues that the evidence is insufficient to sustain a conviction for aiding and abetting the attempt to import marijuana.[3] Chaplin argues that intent alone is not enough to sustain a conviction for aiding and abetting; the government must show some actions that did in fact assist or further the attempt to import marijuana.

Chaplin presents portions of the evidence which fail to establish that Chaplin made specific references to the name of the boat carrying the marijuana or its location. Chaplin argues that the vagueness of the references makes the evidence too speculative to link him with an attempt to import.

 Although the references are general, the jury could reasonably conclude beyond a reasonable doubt that the conversation was an act in furtherance of the importation endeavor. Under *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), all credibility choices and all reasonable inferences from the evidence must be drawn in favor of the jury's verdict. We see no merit in Chaplin's contention that the evidence of his knowledge of the general scheme, shown in the May 13, 1983, meeting, could only support a conspiracy conviction but not a substantive crime of aiding and abetting an attempt.

Wells challenges the sufficiency of the evidence to support his conviction on all counts. On the conspiracy counts, Wells essentially argues that the evidence only

supports a conclusion that he was involved in the 10,000-pound load, for which he was not charged in this indictment. Wells places heavy reliance on testimony by Levi Dupree, a coconspirator and the government's witness, that Wells was not involved in the 30,000-pound scheme. Dupree testified that Wells's statement to Segarra regarding the $30,000 advanced to prepare the boat was not a direct involvement in the conversation but merely Wells's "piping in" to the conversation of Dupree, Segarra, and Collins on April 12, 1983. Wells also emphasizes that he is Collins's brother-in-law. He offers the family relationship to explain his presence during conversations relating to the 30,000-pound load.

Wells concludes that despite basic principles lodging credibility choices with the jury and drawing all reasonable inferences in favor of the jury's verdict, several combined factors—the conduct and demeanor of Segarra on the stand, the admission of evidence of extrinsic offenses, and the testimony of the government's informant Dupree that Wells was not involved—render the conspiracy convictions unsupportable. Wells contends that he has been convicted for "mere presence," "mere association (with active participants in a conspiracy)," and knowledge of the existence of a conspiracy. *See, e.g., United States v. Caro,* 569 F.2d 411 (5th Cir.1978); *United States v. Gutierrez,* 559 F.2d 1278 (5th Cir.1977). *See also United States v. Longoria,* 569 F.2d 422, 425 (5th Cir.1978) (proof of mere association with criminal not, without more, sufficient to sustain conviction for aiding and abetting criminal venture).

These arguments have some weight, but, given the evidence presented, they are arguments for the jury. The jury concluded that Wells's participation in the conspiracy went beyond mere presence. The jury had before it Wells's own statements, which were sufficient to sustain a conviction for conspiracy. He and Collins were the self-

3. We discuss below Chaplin's contention that aiding and abetting an attempt is not a crime.

professed managers of the schemes. They boasted of working together and each taking responsibility for a separate load. Wells and Collins also discussed how to manage the captain and crew which they intended to use.

■ Based on this evidence, the government demonstrated the elements of a conspiracy—that an agreement existed between Wells and other persons to commit a crime, and that Wells knowingly and voluntarily joined or participated in the illegal venture. *See United States v. Vera,* 701 F.2d 1349, 1357 (11th Cir.1983). The jury was permitted to draw inferences from circumstantial evidence, "such as 'inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme.'" *United States v. Tamargo,* 672 F.2d 887, 889 (11th Cir.1982), *cert. denied,* 459 U.S. 864, 103 S.Ct. 141, 74 L.Ed.2d 119 (1983). Like Chaplin, Wells's role may have been minor, but it was sufficiently demonstrated for the jury to find him guilty. Wells's offer of his interpretation of the inferences to be drawn from Ancile Levi Dupree's sometimes conflicting testimony ignores the teaching of *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). All credibility choices and all reasonable inferences from the evidence must be drawn in favor of the jury's verdict. *See United States v. Alvarez,* 755 F.2d 830, 848 (11th Cir.1983); *United States v. Cole,* 755 F.2d 748, 755 (11th Cir.1985). The jury was not required to accept Dupree's view of the meaning to assign to Well's participation in the April 12 meeting.

■ Wells next challenges the sufficiency of the evidence to support his conviction under Count III, charging an attempt to import marijuana into the United States.[4] Count III was charged under an aiding and abetting theory, 18 U.S.C. § 2.

Wells first argues that a defendant cannot be convicted as an aider and abettor unless there is a completed crime. He urges that the evidence was insufficient to establish that there was either an importation or an attempted importation. His statements in this regard are conclusory and the cases cited are not helpful. The argument has no merit.

Wells next contends that his acts failed to pass the requirements of *United States v. McDowell,* 705 F.2d 426 (11th Cir.1983), for the showing of an attempt. Since *McDowell,* this court has considered a sufficiency of the evidence challenge to an attempt conviction in *United States v. Forbrich,* 758 F.2d 555 (11th Cir.1985). *Forbrich* summarizes the elements of an attempt offense as (1) acting with the kind of culpability otherwise required for the commission of the crime and (2) engaging in conduct which constitutes a substantial step toward the commission of the crime. Citing *United States v. Mandujano,* 499 F.2d 370, 376 (5th Cir.1974), *cert. denied,* 419 U.S. 1114, 95 S.Ct. 792, 42 L.Ed.2d 812 (1975). Wells's conduct meets both of these elements. Wells's activities, beginning with the meeting on April 12, 1983, securing the services of "Willie Santos" and the "Yellow Fin" for $750,000 and his later reactivation of the scheme by telling Segarra on May 3 to talk to Dupree demonstrate both his culpability in the crime and his conduct constituting a substantial step. The activities in which Wells engaged and which were placed before the jury were directed to an attempt to import 30,000 pounds of marijuana on the AVCOG6. We reject this claim.

Finally, Wells challenges his conviction on Count IV of the indictment, aiding and abetting the possession of marijuana on board a vessel with the intent to import it. Wells argues that the government did not meet its burden on this charge to establish

---

**4.** Wells also adopts the point raised by Chaplin and discussed later that the charge aiding and abetting an attempt is not a crime.

both possession and intent to import. Wells points to the absence of evidence that he had actual or constructive possession of the marijuana or that he exercised any control or dominion over it. He argues that the last physical act which he committed in connection with the scheme was to attend a meeting on April 18, 1983, to inspect the vessel that was to be used in the 10,000-pound scheme and at which, according to Segarra, there was some discussion of the 30,000-pound scheme. Wells relies for this point on *United States v. Jackson*, 526 F.2d 1236 (5th Cir.1976), in which a codefendant found to have been associated with a criminal venture was held by the court of appeals not to have exercised dominion or control over the controlled substance.

The facts of *Jackson* do not resemble those of Wells's participation in this scheme. In *Jackson*, the evidence established that the codefendant, Jackson, helped arrange a sale of cocaine by introducing one codefendant to another. The facts are described only briefly in *Jackson*, but the basis of the conclusion that Jackson did not participate in possession is that the evidence only established that he facilitated a sale through an introduction. Wells, to the contrary, helped make plans for the offloading of 30,000 pounds of marijuana from one vessel to another. Wells knew that marijuana would be on board a vessel south of the Yucatan, and he knew that it would be brought into the United States. He enlisted Segarra's support in obtaining a vessel to receive the marijuana, and he directed Segarra when to send out his vessel. These actions are sufficient to support a conviction for aiding and abetting the possession of marijuana on board a vessel with the intent to import it.

### Admission of Evidence

Appellants bring a number of challenges to evidentiary rulings by the district court admitting testimony. Many of these challenges overlap substantially. They present the same standard for appellate review.

The general standard for review of evidentiary rulings is whether the district court committed an abuse of discretion. *United States v. Turk*, 722 F.2d 1439, 1441 (9th Cir.1983); *United States v. Russell*, 703 F.2d 1243, 1249 (11th Cir.1983). The trial court has broad discretion in determining the admissibility of evidence. *United States v. Hurley*, 755 F.2d 788 (11th Cir. 1985).

Richardson and Townsend contend that the district court abused its discretion in admitting evidence of a statement made by Collins to Dupree and Segarra concerning his involvement in the 10,000-pound scheme as well as other testimony that Wells, Collins, and Dupree were involved in the separate 10,000 pound-transaction. Wells also objects to this testimony. Appellants argue that no sufficient legal basis for the admissibility of the testimony exists, and, as a result, the district court made numerous confusing and contradictory rulings regarding the admissibility of the testimony about the 10,000-pound scheme. At various times the court ruled that the evidence was not admissible; admissible under Fed. R.Evid. 404(b); not admissible under 404(b); admissible as statements in furtherance of the conspiracy; admissible under 403; and admissible as relevant to Collins's participation in the conspiracy but not for the truth of the matter. Appellants urge that none of the bases for admission used by the district court is valid. They argue that Collins's statement was not admissible as having been made in furtherance of the conspiracy, because he was disassociating himself from it; that it was not admissible as extrinsic act evidence under 404(b) because it did not assist in establishing the elements of one of the charged offenses; that it was not admissible as rebuttal under 404(a) as character evidence because Collins did not take the stand; and that the 10,000-pound scheme was not so "inextricably intertwined" with the 30,000-pound con-

spiracy charged in the indictment as to justify its admission to complete the story. In any event, appellants argue that the evidence was unduly prejudical to Richardson and Townsend and should have been excluded under Fed.R.Evid. 403, even though it was relevant to Collins and Wells's involvement in the conspiracy.

■■■■ These arguments do not persuade us that the district court abused its discretion. Under *United States v. Weeks*, 716 F.2d 830 (11th Cir.1983), evidence of criminal activity other than the charged offense is not extrinsic act evidence under Fed.R.Evid. 404(b) if it arose out of the same transaction or series of transactions as the charged offense, was inextricably intertwined with the evidence of the charged offense, or was necessary to complete the story of the charged offense. Criminal acts by a coconspirator, if committed as part of or in furtherance of the general conspiracy, are not "other act" evidence and are properly admissible to demonstrate the scope of the conspiracy. *United States v. Meester*, 762 F.2d 867 (11th Cir.1985). The evidence of Collins's involvement in the 10,000-pound scheme was properly admitted for the limited purpose of explaining the extent of Collins's involvement. It showed whether he had completely withdrawn from the conspiracy or had simply reduced the level of his involvement in order to pursue the 10,000-pound deal. Additionally, the dismissal by another district court of the 10,000-pound conspiracy indictment as a second indictment for the same conspiracy supports the admission of the 10,000-pound statements as statements made in the course of and in the furtherance of a single conspiracy.

Next, Wells argues that the district court erred in permitting the government to ask Wells's character witness, Rev. Terry, whether he had heard of Wells's two arrests and convictions in 1982. Wells contends that this was an improper use of cross-examination to introduce evidence by question, where the government never offered any evidence of previous offenses.

■■■■ These questions could properly be asked under Fed.R.Evid. 405(a).[5] The government could properly probe Rev. Terry's expression of opinion that Wells was "a law abiding person" with inquiry about specific instances where he had not been law abiding. This inquiry could properly be made in the form of "have you heard" questions. *Michelson v. United States*, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948).

### *Recovery of $30,000 Advance*

The district court admitted the evidence of Townsend's request on May 19th for return of the $30,000. The evidence was admitted solely against Townsend as an admission under Rule 801(d)(2), Federal Rules of Evidence, and the jury was so instructed. Without conceding that the statement was admissible as an admission, Townsend and Richardson argue that it should have been excluded even if an admission under Fed.R.Evid. 403 because of the prejudice to all appellants.[6]

■■■■ The appellants properly recognize that the standard of review is abuse of discretion. This circuit has ruled that rule 403, which permits a trial court to exclude concededly probative evidence, should be used sparingly. *United States v. King*, 713 F.2d 627, 631 (11th Cir.1983). Within its discretion, the district court determined that the probative value of the evidence concerning Townsend's involvement with

---

5. Rule 405(a) provides:
 In all cases in which evidence of character or of a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion.

6. As noted earlier, we decide this issue, despite Townsend's dismissal of his appeal, because of the claimed prejudice to other appellants.

the conspiracy outweighed its prejudicial effect. The court gave a limiting instruction to the jury concerning the correct application of the evidence. The record reflects a sound exercise of discretion.

Richardson and Townsend contend that the district court improperly admitted statements made by Ancile Levi Dupree to Segarra during the first meeting vouching for Townsend's trustworthiness. Appellants argue that the district court incorrectly admitted this evidence under Fed.R.Evid. 803(3) to show Segarra's state of mind. Since Segarra's state of mind is not an issue in the trial, appellants urge that some other basis must be found to uphold admission of the evidence. They urge that it is not admissible under Fed.R.Evid. 404(a) and 404(b). They argue that the statement improperly focused attention on the appellants' character and on extrinsic matters elicited to heighten prejudice against the appellants.

■ We agree with the government that these statements were part of the conspiracy and were appropriately offered into evidence. Dupree's "statements were part of a 'sales pitch'" by a coconspirator "to prove their ability to follow through on their promises." *United States v. McCown*, 711 F.2d 1441, 1453–54 (9th Cir. 1983). The statement was background information setting the stage for meetings and was relevant to the intent and state of mind of the participants. *See United States v. Rivera-Sola*, 713 F.2d 866, 871 (11th Cir.1983) (defendant's claim of prior deals properly admitted).

### Admission of Coconspirator Hearsay

Hearsay evidence of coconspirators was admitted against appellant Chaplin on the basis of an evidentiary ruling made by the district court under *United States v. James*, 590 F.2d 575 (5th Cir.) (en banc),

*cert. denied*, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979). Chaplin argues that his eventual acquittal on the conspiracy counts should relate back to invalidate the admission of these coconspirator statements.

The Eleventh Circuit has explicitly rejected this proposition. *United States v. Kincade*, 714 F.2d 1064, 1065 (11th Cir.1983). This claim has no merit.

### Aiding and Abetting an Attempt

Appellants argue that the charge of aiding and abetting an attempt to import marijuana is not a crime.[7] Apparently based on a reading of the language of 18 U.S.C. § 2, which makes aiders and abettors punishable as principals in offenses against the United States, appellants argue that aiding and abetting must be directly linked to the commission of a substantive crime. In their view, an attempt is not a substantive crime.

■ Appellants cite no authority for the proposition that an attempt is not a substantive crime. They are conceivably relying on the lack of definition of attempt in federal law. *See United States v. Rivera-Sola*, 713 F.2d 866, 869 (1st Cir.1983), for a discussion of the lack of a comprehensive statutory definition of attempt. The basic elements of an attempt are (1) an intent to engage in criminal conduct and (2) conduct constituting a "substantial step" towards the commission of the substantive offense which strongly corroborates the defendant's criminal intent. *See Rivera-Sola*, 713 F.2d at 869 (describing federal courts' use of section 5.01 of the American Law Institute's Model Penal Code (proposed official draft 1962) to define attempt).

Logic does not bear out the appellants' argument. A crime is committed if a person has the requisite intent and takes a substantial step toward commission of the

---

**7.** This point was raised by appellant John Charles Chaplin and adopted by other appellants.

offense. Appellants' citation of cases such as *United States v. Erb*, 543 F.2d 438 (2d Cir.1976), for the proposition that proof that a substantive offense has been committed is necessary to convict an aider and abettor is not helpful. The question presented is whether an attempt is a substantive offense. We are not persuaded by any authority cited nor any arguments made that it is not.

▌▌▌ Although the panel did not consider whether aiding and abetting an attempt is a crime, this court has affirmed a conviction for aiding and abetting an attempt to import marijuana. *See United States v. Phillips*, 664 F.2d 971 (5th Cir. Unit B 1981). This circuit and other circuits have routinely affirmed charges of aiding and abetting an attempt. We hold that a charge of aiding and abetting an attempt to import a controlled substance states a crime.

The suggestion that Count III of the indictment may be interpreted to allege an attempt to aid and abet importation of marijuana is frivolous.

### Government and Prosecutorial Misconduct

▌▌▌ Appellants, Richardson, Wells, and Chaplin each raise claims of governmental misconduct by either the prosecutor, the case agent, or other government employees. An appellate court may reverse an appellant's convictions on a claim of governmental misconduct only if, in the context of the entire trial and any curative instruction by the district court, the misconduct may have prejudiced substantial rights of the accused. *United States v. Esle*, 743 F.2d 1465, 1477 (11th Cir.1984). Appellants lodge an allegation of prosecutorial misconduct that would be serious if we credited their interpretation of a question asked by the prosecution in cross-examination of a defense witness and if we

agreed with appellants about its potential to influence the jury's deliberation.[8]

The disputed question arose when appellant Richardson called an assistant United States attorney to establish for the jury that the prosecution could have called a witness, Anthony Marquez, and could have compelled his testimony notwithstanding an assertion by him of a fifth amendment privilege. The effort was to suggest that Marquez's testimony must be adverse to the government's position at trial. The government countered this suggestion in cross-examination by eliciting from the assistant U.S. attorney an explanation that Marquez would not be appropriately granted use immunity because of his history of perjuring himself under oath about his involvement in the case. The prosecutor then asked whether the assistant U.S. attorney had during his tenure as a government lawyer ever called a witness whom he believed to be a perjurer. The court sustained an objection to this question and instructed the jury to disregard it. The court instructed the jury that they were the sole judge of credibility and polled the jury on their ability to follow the court's instruction.

▌▌▌ Appellants interpret this exchange between the prosecutor and this defense witness as an improper general vouching for the government's witnesses. We agree with the government's assessment at oral argument and in its brief that the point is too academic to have been a likely factor in the jury's deliberations. The thrust of the assistant U.S. attorney's testimony was that he could not vouch for Marquez. In seeking to impress upon the jury that the government had an independent valid reason for not calling Marquez, the prosecutor posed an improper question. An objection was lodged and sustained. Any limited inference of vouching which may have existed was cured by the prompt instruction by the district court. *See United States v.*

---

**8.** This point was raised in the brief of appellants

Townsend and Richardson.

*Dukes,* 727 F.2d 34, 43 (2d Cir.1984); *United States v. Sims,* 719 F.2d 375, 378 (11th Cir.1983).

 Next, appellants argue that the principal witness for the government, Special Agent Segarra, engaged in repeated instances of unprofessional conduct during his testimony which, individually and cumulatively, impaired appellants' substantial rights to a fair and impartial trial. Appellants cite cases, such as *United States v. Pearson,* 746 F.2d 787 (11th Cir.1984), that reverse convictions where improper conduct by the prosecutor deprived a defendant of a fair trial. The only case appellants cite which deals with improper testimony by a government witness is *United States v. Price,* 722 F.2d 88 (5th Cir.1983). In *Price,* a government witness vouched for the truth of the testimony of two other government witnesses, and the district court refused to instruct the jury to disregard this testimony. *Price,* 722 F.2d at 90. As discussed below, the record does not reflect any similarly egregious statement by Segarra, nor does the record lack instructions by the district court to the jury to disregard statements by Segarra in which he protests his truthfulness. Appellants thus do not present any authority for granting a new trial because of the cumulative impact of contentiousness by a government witness where the district court admonishes the witness and properly instructs the jury.

Nonetheless, we have examined the record to determine whether the Segarra testimony presents a level of impropriety that would necessitate our articulating a standard of cumulative prejudice from improper testimony by a government agent. First, we note that appellants raise as Segarra's misconduct some of the same testimony dealt with in the evidentiary section. The comments that we have cannot be classified as prejudicial misconduct. Other parts of the record to which appellants point can be explained by a resistance by Segarra to affirming with a simple "yes" rhetorical summations of evidence by appellants' counsel. Others can be explained by Segarra's need to refer to his notes to refresh his recollection and by argumentative and confusing questions by one of the defendants' counsel.

Appellants also object to Segarra's unsolicited comment that "everyone is related in Everglades City." Appellants maintain that this is a prejudicial remark intended to reinforce a stereotype of Everglades City, Florida, as a closely knit haven for drug smugglers. Appellants concede that the remark in and of itself is not sufficient to warrant the granting of a mistrial. We agree. We also agree with the government that the remark is not obviously prejudicial to appellants. Given the specific explanations of many of the allegedly cumulative improprieties by Segarra and the lack of demonstrable prejudice in this remark, we do not find that it reinforces a view of the testimony as cumulatively prejudicial.

Appellants specifically object that Segarra improperly vouched for his own credibility. These remarks occurred when Segarra resisted an attempt by counsel for one of the appellants to get him to agree that part of his job is "to get convictions if you can." Segarra replied that his job was to "present true facts of the case." After the court cautioned the jury to disregard the remark, appellants' counsel then invited Segarra to agree that a prosecutor's eventual purpose is to obtain a conviction. Segarra replied: "I believe it is to present the true facts of the case." The jury was again instructed to disregard the statement. When appellants' counsel posed a similar question one more time, the court sustained an objection and instructed counsel to move on.

Segarra's answers were intended to deny the suggestion that he would lie to obtain a conviction. In view of the line of questioning that prompted them and the district court's curative instructions, Segarra's replies cannot be said to improperly vouch

for his own credibility or to add to any cumulatively prejudicial effect.[9]

Finally, appellant Chaplin seeks dismissal of the indictment on the ground that "the government improperly made a material exculpatory witness unavailable." On both a factual and a legal basis, the claim is without merit. Appellant asserts that he would have called Aviento Murillo, whom he describes as the captain of the AVCOG6. Murillo was deported on December 12, 1983.

■■■ Murillo was not a captain of the AVCOG6. The district court that tried the true captain criticized him for having attempted to put Murillo forward as the captain while himself assuming a false identity. Thus, Murillo is not a key witness. In addition, the authority that appellant cites discusses deportation of witnesses before a defendant has an opportunity to interview them. *See United States v. Henao,* 652 F.2d 591 (5th Cir.1981). Chaplin had time to interview Murillo between July 7, 1983, and December 12, 1983, if he had a genuine interest in Murillo's testimony. Appellant has failed to make a credible showing of prejudice flowing from the deportation of Murillo. *See United States v. Pepe,* 747 F.2d 632, 654–55 (11th Cir.1984).

None of the issues presented by the appellants provides a basis for relief. The judgments in these consolidated cases are affirmed.

**AFFIRMED.**

---

**9.** Appellants offer the recent decision of this court in *U.S. v. Calvin Jones,* 765 F.2d 996 (11th Cir.1985) reversing a conviction obtained in part through Agent Segarra's testimony as an indication that Segarra gives "combative, unobjective" testimony that necessitates appellate reversals of convictions.

We do not accept the suggestion. In *Calvin Jones,* the court held that a mere submission of conditional proposals by an alleged conspirator does not establish a conspiracy. Segarra's testimony was analyzed to determine what evidence of conspiracy it provided. *See Calvin Jones,* 765 F.2d at 999–1000. We find nothing in the opinion that suggests that Segarra's demeanor as a witness was a factor in the reversal.

We are also unwilling to adopt the proposition that a government agent becomes tainted as a future witness when a case in which the agent testifies is reversed on appeal.