# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
November 7, 2011

Lyle W. Cayce
Clerk

No. 10-40684

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

JAIME MORENO-GONZALEZ

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before WIENER, CLEMENT, and ELROD, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Jaime Moreno-Gonzalez appeals his jury conviction for attempting to distribute over 1000 kilograms of marijuana based on insufficient evidence. Because there was sufficient evidence with which a jury could have convicted Moreno-Gonzalez, we AFFIRM his conviction.

## FACTS

Moreno-Gonzalez drove a tractor-trailer from Mexico and entered the United States where he was stopped at a checkpoint in Falfurrias, Texas. As Moreno-Gonzalez approached the checkpoint, he "immediately" and "without [the border patrol agent] asking" told the agent that he was a U.S. citizen. Afterwards, Moreno-Gonzalez's brother, Cirilo Moreno-Gonzalez ("Cirilo"), who

No. 10-40684

was lying down in the sleeper compartment of the tractor (i.e., the cabin area of the truck), "snuck his head out from the curtain" and handed the agent his permanent resident alien card. At some point, the agent asked Moreno-Gonzalez where he was going, and he responded that he was hauling produce to North Carolina.

While Moreno-Gonzalez was stopped at the checkpoint, a drug-detection dog alerted another border patrol agent to the presence of drugs in Moreno-Gonzalez's tractor-trailer. Moreno-Gonzalez consented to the agents' search of the trailer, and the vehicle was sent to a secondary inspection area. There, an X-ray of the truck revealed "anomalies" in the cargo, and the drug-detection dog again alerted to the truck. Moreno-Gonzalez consented to open the back of the trailer. Agents broke the seal of the trailer and discovered 112 bundles of marijuana inside boxes in the sealed compartment. The boxes only occupied one-eighth of the space in the trailer, and the trailer did not contain any other cargo. The total weight of the marijuana was 1,329.5 pounds (585.1 kilograms).

The agents also found $4,420 in cash on Moreno-Gonzalez's person — $900 in his wallet and two small bundles of cash, amounting to $3,520, wrapped with a rubber band in his pocket. Moreno-Gonzalez explained that one of the bundles of cash was for fuel. Additionally, the agents found two bills of lading in the cab of Moreno-Gonzalez's truck: one dated July 23, 2009 and one dated September 20, 2009. The first documented a shipment from Turner Enterprises, a business located at an address in McAllen, Texas, to Elite Coverall, a business located at an address in Chicago, Illinois. Both businesses and addresses were later found not to exist. The second bill of lading — the one for Moreno-Gonzalez's delivery — also stated that the shipment was coming from Turner Enterprises but that it was going to "QVC" in "Rocky Mount, North Carolina," without specifying a ship-to address. Both bills of lading reflected the same bill of lading numbers

No. 10-40684

and the same trailer numbers, although the seal numbers and the carrier names differed. Moreno-Gonzalez told the agents that the bills of lading were in the truck when he first entered it, but he was "familiar with them."

Moreno-Gonzalez was arrested at the checkpoint and charged in an indictment with: (1) "knowingly and intentionally conspir[ing] . . . to knowingly and intentionally possess with intent to distribute . . . more than one thousand (1,000) kilograms of marihuana, that is, approximately one thousand seven hundred ninety-six (1,796) kilograms of marihuana, a Schedule 1 controlled substance" and (2) "knowingly and intentionally possess[ing] with intent to distribute . . . more than one hundred (100) kilograms of marihuana, that is, approximately five hundred eighty five and one-tenth (585.1) kilograms of marihuana, a Schedule I controlled substance." On March 25, 2010, a jury found Moreno-Gonzalez not guilty of the conspiracy charge but guilty of the possession charge. He now appeals his conviction for sufficiency of the evidence.

## STANDARD OF REVIEW

Our review of the sufficiency of the evidence is "highly deferential to the verdict." *United States v. Harris*, 293 F.3d 863, 869 (5th Cir. 2002). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see United States v. Villarreal,* 324 F.3d 319, 322 (5th Cir. 2003). "The evidence is viewed in the light most favorable to the verdict, accepting all credibility choices and reasonable inferences made by the trier of fact which tend to support the verdict." *United States v. Asibor,* 109 F.3d 1023, 1030 (5th Cir. 1997). We must ensure that our inquiry is "limited to whether the jury's verdict was reasonable, not whether we believe it to be correct." *United States v. Williams*, 264 F.3d 561, 576 (5th Cir. 2001). Finally, "[i]t is not necessary that the evidence exclude every reasonable hypothesis of innocence or

be wholly inconsistent with every conclusion except that of guilt." *United States v. Lage*, 183 F.3d 374, 382 (5th Cir. 1999), and any conflict in the evidence must be resolved in favor of the jury's verdict. *United States v. Duncan*, 919 F.2d 981, 990 (5th Cir. 1990).

A large part of the defendant's argument on appeal revolves around the proper inferences and weight the jury is permitted to give to circumstantial evidence. With that in mind, it is important to highlight that our case law makes clear that the standard of review for sufficiency of circumstantial evidence is the same as it normally would be for direct evidence. *See Lage*, 183 F.3d at 382 ("This standard of review is the same regardless of whether the evidence is direct or circumstantial."); *see also United States v. Mergerson*, 4 F.3d 337, 341 (5th Cir. 1993).

## DISCUSSION

### I. Sufficiency of the Evidence

Although there was evidence presented to the jury which could have led it to either verdict, there was enough evidence presented for the jury to find Moreno-Gonzalez had the requisite mental state for the crime alleged. Since Moreno-Gonzalez is challenging the sufficiency of the evidence, it is his burden to demonstrate that the evidence, when reviewed in the light most favorable to the government, would not allow a rational jury to find every element of the offense beyond a reasonable doubt.  He has failed to meet that burden.

### A. *Quantity of Drugs*

The sheer quantity of the drugs is one fact that a rational jury could have used to find the necessary knowledge on the part of Moreno-Gonzalez. The jury could have very rationally assumed, as the government argued, that a sophisticated drug operation, capable of transporting thousands of pounds of drugs, would not leave its product in the hands of an unwitting dupe. "[I]t is unreasonable to believe that  [a driver] would have been entrusted with a large

quantity of drugs without his knowledge." *United States v. Ramos-Garcia*, 184 F.3d 463, 466 (5th Cir. 1999).

Our precedent makes clear that the jury is allowed to infer knowledge based on the quantity of drugs involved, "as long as other evidence supports the inference." *United. States v. Garcia-Flores*, 246 F.3d 451, 455 (5th Cir. 2001). We must therefore weigh other evidence supporting this inference. Once other evidence was presented which supports this inference, it was possible for the jury to conclude that the quantity of drugs was overwhelming enough to dispel any reasonable doubt.

*B. False Bills of Lading*

The jury heard evidence which showed not only that the bills of lading were suspicious, but also fraudulent. The defendant admitted to Agent Ramos that he was familiar with the bills although he had not composed them. The bills of lading were so erroneous that Moreno-Gonzalez could not have made a delivery to the locations listed on them. While the jury also heard testimony that it was not unusual for drivers to receive a change of location or more specific directions for delivery while en route, it is possible that they discounted that alternative given the other evidence presented. It is also possible that the jury thought, having looked at the bills of lading, that an innocent person would have been suspicious enough to inquire further before setting out on the journey.

The falsity of the bill of lading need not be enough to arouse an innocent person's suspicion. The question we must ask is whether or not the bills were so false that the jury deemed it unlikely that a drug operation would have left an innocent driver with those faulty bills of lading without the driver having knowledge of the true destination. It is entirely possible that in conjunction with the large quantities of drugs, the jury believed it was unlikely that a drug smuggler would leave an unwitting dupe to risk making a delivery to an

unknown or non-existent destination, or risk having him get to the destination listed on the bill of lading, only to be turned away.

In other words, the jury could have inferred that because of the large quantity of drugs *and* the false bill of lading, the driver must have had knowledge of the drugs in the trailer, of the real final destination for delivery to the drug operation, and that the bill of lading was just a cover. As the prosecutor argued in his closing argument:

> Where is he supposed to take that stuff? Not to QVC, not to North Carolina. He gets a call to take it somewhere else? If he doesn't know, is he going to do it or not? If you get a call saying, "Hey, you know what, I'm in South Carolina, or New Jersey, or Seattle, or Portland. That's where you need to go now, and go behind the gas station and drop it off."
>
> If you're the owner of that marijuana, do you really want to risk the driver saying, "Huh-uh. Thanks, but no thanks. I don't know what's going on –" or opening it up, and to his surprise, seeing marijuana in there and calling the police? No. Is that really reasonable to think that the person driving the stuff does not know that it's in there?

The lack of a legitimate bill of lading, the implausible explanation Moreno-Gonzalez provided to investigators, and the large quantities of drugs could have been enough for the jury to find the knowledge element of the crime. It is implausible that a sophisticated drug operation would leave such a large quantity of drugs in the hands of an unwitting dupe with no way of retrieving them. *See Villarreal*, 324 F.3d at 324; *Garcia-Flores*, 246 F.3d at 455.

Furthermore, upon rejection of the delivery, the innocent driver would be more likely to open the trailer and discover the large quantity of drugs. Upon

discovery, an innocent person would have involved the police. The jury could very well have found that these myriad potential pitfalls likely meant that it was entirely implausible that a sophisticated drug operation would leave an innocent person in possession of such a valuable stash of drugs with a false destination. Having been presented with this evidence at trial, we do not need to delve into the exact rationale of the jury, or their weighing of potential explanations. It suffices to say that there was plausible evidence presented that would link Moreno-Gonzalez with the knowledge that he was transporting a significant quantity of illegal narcotics.

## C. Cash on Hand

The jury heard a number of pieces of evidence which could have indicated the defendant had knowledge of the drugs. They heard testimony that the defendant had significantly more cash on hand than a normal driver would have had if he was making the purported drive listed on the bill of lading. We have previously held that large quantities of cash can be used to infer knowledge of large quantities of drugs. *See United States v. Ortega Reyna*, 148 F.3d 540, 544 (5th Cir. 1998).

## D. Trailer Window

There is also the nature of the shipment which the jury could have weighed to find knowledge. While both sides agree that the trailer compartment was locked when the defendant received it, they dispute whether he could have seen the relative emptiness of the trailer. There was a six by twelve inch window through which a person could look into the trailer. It was noon when the defendant was stopped. Whether or not Moreno-Gonzalez could have seen that the shipment inside was not in fact 'produce' but was U-Haul boxes, or that the shipment only took up one-eighth of the trailer, are factors that the jury could have weighed. The jury could have determined that given the incomplete bill of lading that the defendant admitted looking at—including the incomplete

information on what he was shipping—an innocent person would have looked inside to verify what he was transporting. Taken together, the jury could have easily concluded that this story was so unlikely or implausible as to infer knowledge of the drugs. We have repeatedly "acknowledged that a less-than-credible explanation for a defendant's actions is part of the overall circumstantial evidence from which possession and knowledge may be inferred." *United States v. Diaz-Carreon*, 915 F.2d 951, 955 (5th Cir. 1990)(internal quotation marks omitted).

II. Safety Valve Reduction

Moreno-Gonzalez also argues that the judge erroneously denied him a safety valve reduction for truthfully providing all relevant information regarding the offense to the government. *See* 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2(a)(5). The plain language of the statutes and guidelines requires that he truthfully provide all information and evidence regarding the offense to be eligible for the reduction.  Moreno-Gonzalez simultaneously argues that there was insufficient evidence to convict him, while also arguing that he gave all the information he had regarding the offense.

In this instance, the two arguments are incompatible. A finding of guilt by the jury diminishes Moreno-Gonzalez's argument that he was completely truthful to the government, and undercuts his claim for the safety valve reduction. While other circuits have reached differing conclusions on this issue, there are no cases in this circuit holding that a defendant is eligible for the safety valve reduction under these circumstances, and we decline to extend other circuits' precedents here. *Compare United States v. Sherpa*, 110 F.3d 656, 660-62 (9th Cir. 1996) *with United States v. Reynoso*, 239 F.3d 143, 149-50 (2d Cir. 2000). Our case law makes clear that the burden is on the defendant to prove his eligibility for the safety valve reduction. *United States v. Flanagan*, 80 F.3d 143, 146-47 (5th Cir. 1996). With the record before this court, we find that Moreno-

No. 10-40684

Gonzalez has failed to meet that burden, and that the district court finding that he did not provide truthful information was not clearly erroneous in light of the jury verdict. *See United States v. Ridgeway*, 321 F.3d 512, 516 (5th Cir. 2003) (holding that a determination as to a defendant's credibility for a safety valve reduction is a factual finding that is reviewed for clear error).

## CONCLUSION

While a jury could have found the defendant not guilty, that is not the question presented. Given the evidence, there are many avenues or inferences that the jury could have taken to reach either a guilty or not guilty verdict. Our review of the evidence cannot include a review of the weight or credibility of the evidence, as that is solely within the jury's province. *United States v. Hayes*, 342 F.3d 385, 389 (5th Cir. 2003). Our statement in one of our earliest cases testing the sufficiency of knowledge evidence in a drug trafficking conspiracy remains true: "[T]he jury surely was not compelled to find guilty knowledge; it could well have rejected inferences which are reasonable to draw from these facts. We hold only that there was sufficient evidence from which the jury could infer guilty knowledge on the part of the defendant beyond a reasonable doubt." *United States v. Del Aguila-Reyes,* 722 F.2d 155, 158 (5th Cir. 1983). Looking at the evidence presented to the jury and the inferences they could draw, there was sufficient evidence for a jury to find knowledge beyond a reasonable doubt. Because our inquiry must be "limited to whether the jury's verdict was reasonable, not whether we believe it to be correct," *United States v. Williams*, 264 F.3d 561, 576 (5th Cir. 2001), we affirm the verdict below.

JACQUES L. WIENER, JR, Circuit Judge: concurring in the judgment only.