# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 20, 2012

Lyle W. Cayce
Clerk

No. 11-30401

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

DANIEL ESTES CROOK,

Defendant–Appellant.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 3:09-CR-133-1

Before JONES, Chief Judge, and OWEN and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Daniel Crook appeals his convictions on eight counts arising from his involvement in obtaining benefits from emergency programs enacted in response to a severe drought in northern Louisiana in 1998. We affirm.

**I**

Crook, an emergency-room physician, was involved with two farming entities, Crook Farm Partnership (CFP) and Crook Planting Company (CPC), which participated in federal relief programs implemented in response to a

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

severe drought that took place in northern Louisiana in 1998. Crook held a power of attorney for CFP, and he was a partner in CPC. Crook submitted an application for payments from the Crop Loss Disaster Assistance Program (CLDAP) on behalf of CFP. The CLDAP was enacted by Congress to provide direct payments to farmers affected by the drought. The application that Crook submitted indicated that CFP harvested 29,106.94 hundredweight of rice during the 1998 crop year. (One hundredweight is the equivalent of 100 pounds.) In addition to the CLDAP direct payments, the federal government made emergency loans available to drought-stricken farmers. In obtaining an emergency loan for CFP, Crook certified a Certification of Disaster Losses, which listed CFP's rice yield for 1998 as 23.98 hundredweight per acre. Both Crook and the Government agree that the amounts on the CLDAP application and the Certification of Disaster Losses were incorrect because they failed to account for 45,000 hundredweight of rice. Crook also pledged farming equipment as collateral for an emergency loan. In 2005, he sold some of this equipment, which was pledged as security to the Farm Service Agency (FSA), without notifying the FSA or receiving its consent, and he used all of the proceeds in payment of an indebtedness to a bank.

Based on the incorrect figures in the CLDAP application and the Certification of Disaster Losses, Crook was charged with two counts of making a false statement to the FSA in violation of 18 U.S.C. § 1014. Crook was also charged with six counts of disposing of property mortgaged or pledged to the FSA in violation of 18 U.S.C. § 658, each charge being related to an individual piece of pledged equipment. Crook asserted that Phillip Sivils, his employee who gathered the information needed to apply for the emergency programs, was at fault for the incorrect figures. He also asserted that, when he sold the pledged equipment, he believed that the bank had a security interest superior to that of the FSA and, accordingly, that he believed he was acting within his rights in

No. 11-30401

selling the equipment and tendering the proceeds to the bank.  The jury, however, convicted on all eight counts.  Crook was sentenced to twenty-four months of imprisonment to be followed by five years of supervised release.  He was ordered to pay $344,515.19 in restitution, and a special assessment of $800 was imposed.  Crook has raised several claims of error regarding his convictions.

## II

The first issue Crook raises is that his convictions under 18 U.S.C. § 1014 violate the Ex Post Facto Clause of the United States Constitution.  Crook contends that his convictions on counts one and two punish acts not punishable when committed because § 1014 did not apply to statements or reports made to the FSA in April 1999, when the acts for which he was convicted occurred.  In April 1999, § 1014 prohibited "knowingly mak[ing] any false statement or report . . . for the purpose of influencing in any way the action of . . . the Secretary of Agriculture acting through the Farmers Home Administration" (FHA),[1] but Crook's acts involved the FSA, not the FHA.  Crook argues that the FSA—created during a United States Department of Agriculture (USDA) reorganization in 1994—was a separate and distinct agency from the FHA and that the FSA was not covered by § 1014 until that section was amended in October 1999, after the acts here, to insert "or successor agency" after the "the Farmers Home Administration."[2]

We review de novo a constitutional challenge to a federal statute.[3] The Ex Post Facto Clause forbids Congress from enacting any law that "imposes a

---

[1] 18 U.S.C. § 1014 (Supp. IV 1999) (current version at 18 U.S.C. § 1014 (Supp. IV 2011)).

[2] Agriculture, Rural Development, Food and Drug Administration, and Related Agencies Appropriations Act, 2000, Pub. L. No. 106-78, 113 Stat. 1174.

[3] *United States v. Portillo-Munoz*, 643 F.3d 437, 439 (5th Cir. 2011) (citing *United States v. Anderson*, 559 F.3d 348, 352 (5th Cir. 2009)).

3

No. 11-30401

punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed; or changes the rules of evidence by which less or different testimony is sufficient to convict than was then required."[4]

The Government argues that the reorganization and statutory amendment were changes in form and structure, not substance. Its position is that Crook's acts were prohibited before and after the reorganization and statutory amendment.

We conclude that there was no Ex Post Facto Clause violation. In *Blum v. United States*, we held that a conviction under a statute "amended solely for the purpose of reflecting [a] change of name" did not violate the Ex Post Facto Clause.[5] In *Blum*, at the time of the illegal acts the statute referenced the United States Housing Authority, but because of a previous agency name change, the agency with which the defendant had transacted was known as the Public Housing Administration.[6] Not until after the defendant's acts was the statute amended to reflect the agency name change.[7] We rejected the Ex Post Facto Clause challenge because the defendant "was not prejudiced" by the amendment; the amendment was "one of form only."[8]

The October 1999 amendment of § 1014 was similarly "one of form only." Section 1014 was amended solely to reflect the prior USDA reorganization, which created the FSA as a successor agency to the FHA with jurisdiction over

---

[4] U.S. CONST. art. I, § 9, cl. 3; *Cummings v. Missouri*, 71 U.S. 277, 325-26 (1866).

[5] 212 F.2d 907, 910-11 (5th Cir. 1954).

[6] *Id.* at 909-11.

[7] *Id.* at 909 n.2, 911 & n.4.

[8] *Id.* at 911.

4

No. 11-30401

the FHA's disaster loan programs and other lending programs.[9]  Crook was not prejudiced because the amendment did not punish an act not punishable when committed.  At the time of the acts alleged in counts one and two, the previous version of § 1014 criminalized those acts; the section merely lacked the new agency name resulting from the 1994 reorganization.  Accordingly, Crook's convictions on counts one and two did not violate the Ex Post Facto Clause.  We reject Crook's argument that the rule of lenity requires strict construction of § 1014 in his favor because the law in this regard is clear, not ambiguous.[10]  Our decision is consistent with the only other court of appeals to have addressed this question.[11]

**III**

Next, Crook argues that the district court erred in admitting certain evidence pursuant to Federal Rule of Evidence 404(b). "We review the admission of evidence under Federal Rule of Evidence 404(b) under a 'heightened' abuse of discretion standard. . . . However, we do not reverse for erroneous admissions under Rule 404(b) if the error was harmless."[12]

Rule 404(b) states that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."[13]  However, "[t]his

---

[9] *See* 7 U.S.C. § 6932 (authorizing the establishment of the Consolidated Farm Service Agency (CFSA)); Agency Name Change, 61 Fed. Reg. 1109 (Jan. 16, 1996) (to be codified at 7 C.F.R. ch. XVIII) (renaming the CFSA as the FSA).

[10] *See Burgess v. United States*, 553 U.S. 124, 135-36 (2008) (declining to apply the rule of lenity were "there [was] no ambiguity for the rule of lenity to resolve").

[11] *See United States v. Alfonzo-Reyes*, 592 F.3d 280, 288-89 (1st Cir. 2010).

[12] *United States v. Templeton*, 624 F.3d 215, 221 (5th Cir. 2010) (citing *United States v. McCall*, 553 F.3d 821, 827 (5th Cir. 2008); *United States v. Jackson*, 339 F.3d 349, 354 (5th Cir. 2003)).

[13] FED. R. EVID. 404(b)(1).

evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."[14]    We apply a two-step test in analyzing Rule 404(b) admissions.[15]   "First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character.   Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of [R]ule 403."[16]

The district court permitted the Government to introduce evidence that CFP pledged a security interest in a Cessna aircraft and cotton gin owned by Crook, personally, rather than CFP, to secure a FSA loan to CFP.   There was evidence that it was not disclosed to the FSA that Crook, not CFP, owned these assets.   As a consequence, the FSA did not conduct a search of lien records on these assets in Crook's name.   There was also evidence that Crook sold the aircraft and cotton gin without notifying the FSA.   Without these assets as security for the FSA loans, the loans were under-collateralized.

Crook was not indicted on charges involving this conduct.   On appeal, Crook challenges the Rule 404(b) admission of this evidence on two grounds: (1) the evidence was irrelevant to the charges against him because the Government could not establish that the execution of the security agreement was an act on his part, and (2) alternatively, the evidence's probative value was substantially outweighed by its undue prejudice.

In admitting the evidence, the district court found that it was relevant to Crook's intent or lack of mistake in light of his defense strategy.   The court rejected the irrelevancy argument raised on appeal because the Government

---

[14] FED. R. EVID. 404(b)(2).

[15] *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (en banc).

[16] *Id.*

No. 11-30401

intended to prove that Crook was involved. As for undue prejudice, the district court determined that it did not substantially outweigh the evidence's probative value.

The district court acted within its discretion in admitting the evidence on the condition that proof would be introduced later to show Crook's involvement.[17] Furthermore, the evidence introduced at trial shows that it was not an abuse of discretion to conclude that there was sufficient proof to support a finding that Crook was involved.[18] Colby Flint, an FSA employee, testified that either Crook or his employee, Sivils, added the airplane and cotton gin as collateral. Flint testified that, based on his experience, if Sivils added the items he would not have done so without Crook's approval. Sivils testified that, while he did not remember doing so, he would not have added Crook's personal property without Crook's consent. Finally, Paula Davis, a bank employee, testified that Crook told her that the FSA made him pledge his airplane to obtain the loans.

The district court also acted within its discretion in concluding, in accordance with *Beechum*'s first step, that the extrinsic evidence was relevant to Crook's intent or lack of mistake. Crook's defense was that he lacked the *mens rea* required for conviction. It was within the district court's discretion to conclude that the extrinsic evidence—indicating that Crook pledged his airplane and cotton gin as collateral for a CFP loan without disclosing that he was the true owner of the items and indicating that he concealed his unauthorized disposition of the items—had a tendency to make it more probable that Crook committed the charged crimes because the evidence tended to show that Crook's charged conduct indicated a pattern of fraud instead of isolated instances of mistake or accident.

---

[17] *See* FED. R. EVID. 104(b).

[18] *See id.*

No. 11-30401

Finally, in accordance with *Beechum*'s second step, while admission of this evidence posed some risk of undue prejudice, in light of Crook's defense, the district court's conclusion that the undue prejudice did not *substantially* outweigh the evidence's probative value was not an abuse of discretion. Furthermore, the district court gave a limiting instruction that informed the jury that the extrinsic evidence was not to be used to decide whether Crook committed the charged acts; it was only to be considered in determining if he had the required *mens rea*. This instruction, which we presume the jury followed,[19] reduced the likelihood of undue prejudice and further supports the district court's decision to admit the evidence.

**IV**

Crook claims that the district court abused its discretion in excluding the testimony of his expert witness, citing only *United States v. Tucker* in support of his argument.[20] In *Tucker*, the exclusion rested on Federal Rule of Evidence 702. No constitutional infringement was urged, nor has any been urged in this case. We are not asked, therefore, to apply *Taylor v. Illinois*[21] nor our own precursor to *Taylor*, *United States v. Davis*.[22]

When the exclusion of an expert due to discovery violations is challenged as an abuse of discretion on non-constitutional grounds, the district court's abuse of discretion must be clear.[23] Here, the district court excluded the testimony of Crook's expert, Gary Brannon, for failure to comply with Federal Rule of

---

[19] *E.g.*, *United States v. Mudekunye*, 646 F.3d 281, 289 (5th Cir. 2011) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)).

[20] 345 F.3d 320, 326 (5th Cir. 2003).

[21] 484 U.S. 400 (1988).

[22] 639 F.2d 239 (5th Cir. Unit B Mar. 1981); *see also United States v. Alexander*, 869 F.2d 808, 812 (5th Cir. 1989).

[23] *See United States v. Garza*, 448 F.3d 294, 299 (5th Cir. 2006).

No. 11-30401

Criminal Procedure 16(b)(1)(C), which requires the defendant, at the Government's request, to provide a summary of expert testimony if the Government complies with a similar request by the defendant.[24] The district court concluded that Crook failed to provide a timely summary of Brannon's testimony and "that the only appropriate remedy [was] the exclusion of Brannon's testimony." While the district court stated that it did not believe that Crook's counsel intentionally failed to comply with Rule 16(b)(1)(C), it determined "that the prejudice to the Government [was] too great to allow Brannon to testify and that a continuance or other remedy [was] inappropriate given the time already invested by counsel, the Court, and the jury." In particular, the district court noted the Government's concern that it would be necessary—but impossible because of the late date—for the Government to retain an expert of its own if Brannon were allowed to testify.

In light of the record, we cannot conclude that the district court's decision to exclude Brannon's testimony was an abuse of discretion. Crook argues that the Government never requested a summary of expert testimony, but the record reveals that, at his arraignment, an oral motion for discovery was made by Crook and an oral motion for reciprocal discovery was made by the Government. The motions were granted, and the district court considered the Government's reciprocal discovery request sufficient to constitute a request for a summary of expert testimony. The record and arguments before us are insufficient to call the district court's conclusion on this point into question; the record of the arraignment is minimal, the district court was familiar with its own proceedings, and Crook has not identified anything in the record to show that the request was insufficient.

---

[24] *See* FED. R. CRIM. P. 16(b)(1)(C).

No. 11-30401

Additionally, although Crook argues that the Government would not have been prejudiced if Brannon had been allowed to testify, again we are not presented with sufficient justification to call the district court's conclusion to the contrary into question. Prior to trial, Crook did provide the Government with Brannon's résumé and an e-mail indicating that Brannon might be called as an expert, but we cannot say that it was an abuse of discretion for the district court to conclude that this information was insufficient to put the Government on notice that it needed to obtain its own expert. Although the résumé indicated Brannon's banking experience and the e-mail referred to him as a "banking guy," neither the résumé nor the e-mail provided insight into the exact nature of his intended testimony.

Rule 16(d)(2)(C) provides that a court may prohibit a party from introducing undisclosed evidence,[25] and the district court concluded that, based on the circumstances, exclusion of the defense witness was the only appropriate remedy. As discussed above, the district court's conclusion that the Government would have been prejudiced if Crook were allowed to call Brannon as an expert witness was not an abuse of discretion, and on appeal, Crook has not argued that an alternative remedy would have been sufficient.

Crook argues that his counsel's failure to comply with Rule 16 constitutes ineffective assistance of counsel. Crook has forfeited this claim because of inadequate briefing.[26] Neither Crook's initial appellate brief nor his reply brief included any legal argument or cited any authority in support of this claim.

---

[25] FED. R. CRIM. P. 16(d)(2)(C).

[26] *United States v. Beaumont*, 972 F.2d 553, 563 (5th Cir. 1992) ("Failure of an appellant to properly argue or present issues in an appellate brief renders those issues abandoned."); *see also* FED. R. APP. P. 28(a)(9).

No. 11-30401

## V

Crook also argues that the district court erred in refusing to give his proposed jury instruction. We review for abuse of discretion, subject to a harmless-error analysis:[27]

> The district court retains substantial latitude in formulating its jury charge, and we will reverse only if the requested instruction is substantially correct; was not substantially covered in the charge as a whole; and if the omission of the requested instruction seriously impaired the defendant's ability to present a given defense.[28]

At trial, Crook requested the following jury instruction: "A creditor's assignment or transfer of a right is effective against the debtor only from the time the debtor has actual knowledge, or has been given notice of the assignment." Crook requested this instruction because his defense to counts three through eight was based on his lack of knowledge of the bank's assignment of its security interest to the FSA. The district court refused to give the instruction. The court concluded that the instruction was not directly relevant to Crook's state of mind, indicated that it was concerned that the instruction would be confusing to the jury as it involved a collateral matter, and noted that Crook was not prevented from offering evidence that he acted in good faith. Crook argues that the court's refusal to give the requested instruction requires reversal because the "backbone" of his defense to counts three through eight was his contention that he was within his rights to pay the bank the proceeds from the equipment sales if he was unaware that the bank had assigned the FSA first position on the equipment liens.

The district court did not abuse its discretion in refusing to give Crook's proposed jury instruction because the refusal to give the instruction did not

---

[27] *United States v. Jones*, 664 F.3d 966, 978 (5th Cir. 2011) (citing *United States v. Edelkind*, 525 F.3d 388, 397 (5th Cir. 2008)).

[28] *Id.* (quoting *Edelkind*, 525 F.3d at 397) (internal quotation marks omitted).

seriously impair Crook's ability to present his defense to counts three through eight. These counts charged Crook with violating 18 U.S.C. § 658, which requires the defendant to act knowingly with intent to defraud. In essence, Crook's defense was that he lacked the necessary intent to defraud because he was acting in a good-faith belief that he was authorized to pay the proceeds of the equipment sales to the bank as first lienholder.

The instructions that the district court did give to the jury contained the following concerning good faith:

> Good faith is a complete defense to the charges in the indictment, since good faith on the part of the Defendant is inconsistent with intent to defraud, which is an essential part of the charges. . . .
>
> With respect to each of the counts charging fraud, if the Defendant believed in good faith that he was acting properly, even if he was mistaken in his belief, and even if others were injured by his conduct, you cannot convict him of the specific charge being considered.

These instructions gave the jury a vehicle through which it could consider Crook's defense. If the jury believed that Crook paid the proceeds to the bank because he believed that he was authorized to do so, it could have found that he "believed in good faith that he was acting properly" and, accordingly, that he had a "complete defense." In fact, these instructions permitted the jury to accept Crook's defense even if the law was not as he believed it to be as long as the jury found that Crook in good faith believed the law was as he believed it to be. Because Crook's ability to present his defense was not seriously impaired, the refusal to give his proposed jury instruction was not an abuse of discretion.

## VI

Another of Crook's claims is that his Sixth Amendment right to compulsory process was violated by the Government. We review Crook's

compulsory-process claim de novo, subject to harmless-error analysis.[29]  The basis of Crook's compulsory-process claim is his ultimate inability to call a bank officer, Tom Casey, who had dealt with Crook regarding his loans.  Crook asserts that he was unable to locate Casey prior to trial.  The Government, however, was able to locate Casey.  It subpoenaed him and arranged for him to fly to Monroe, Louisiana, from Arizona in order to debrief him.  Crook asserts that when his counsel learned of this meeting, he informed the Government that he wanted to call Casey as a witness but had been unable to locate him.  On the day that Casey was in Monroe, Crook's counsel became ill, and the trial was continued.  When the trial resumed, Crook's counsel learned that the Government would not be calling Casey and that he had been allowed to return to Arizona.  At that point, Crook's counsel requested, and the Government provided, Casey's contact information, but attempts to serve him were unsuccessful.

The Government asserts that it never guaranteed that Casey would testify and that Crook never asked that Casey be kept in Monroe until Crook could speak with him.  Additionally, the Government asserts that Crook never requested that the Government facilitate service of Crook's subpoena on Casey, never requested a continuance when he learned that Casey had returned to Arizona, and never sought the court's assistance in having Casey subpoenaed.  All that was requested was Casey's contact information, which was promptly provided.

---

[29] *See Crane v. Kentucky*, 476 U.S. 683, 690-91 (1986) (holding that harmless-error analysis applies to the erroneous exclusion of testimony about the circumstances of a confession but not clearly indicating whether the Due Process, Compulsory Process, or Confrontation Clause was violated); *United States v. Redd*, 355 F.3d 866, 878 (5th Cir. 2003) (citing *United States v. Soape*, 169 F.3d 257, 267 (5th Cir. 1999)) (reviewing de novo the denial of a request to produce a witness); *Janecka v. Cockrell*, 301 F.3d 316, 325, 327 (5th Cir. 2002) (citing *Crane*, 476 U.S. at 689) (applying harmless-process analysis to a compulsory-process claim); *Soape*, 169 F.3d at 267 (reviewing de novo whether the refusal to subpoena a witness violates the Sixth Amendment).

No. 11-30401

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right "to have compulsory process for obtaining witnesses in his favor."[30]   "This right proscribes 'the government's making a witness unavailable . . . .'"[31]   When the Government makes a witness unavailable, the defendant "must at least make some plausible showing of how [the witness's] testimony would have been both material and favorable to his defense."[32]

Here, the Government did not make Casey unavailable, and therefore the Government's conduct did not rise to the level of a constitutional violation.[33]   The Government simply permitted a witness whom it had subpoenaed to return home after it was determined that his testimony would not be required at trial. Although Crook asserts that his counsel informed the Government that he intended to call Casey as a witness and had been unable to locate him, Crook does not assert that he asked the Government to keep Casey in Monroe for his use at trial.  Additionally, Crook never asked for help from the Government or the district court in obtaining Casey's presence.  What the record shows is that the Government was fully cooperative when Crook actually asked for its assistance; Casey's contact information was provided promptly when it was first requested.  The fact that Crook's attempts at service were unsuccessful is not attributable to the Government.

---

[30] U.S. CONST. amend. VI.

[31] *United States v. Colin*, 928 F.2d 676, 679 (5th Cir. 1991) (quoting *United States v. Henao*, 652 F.2d 591, 592 (5th Cir. Unit B Aug. 1981)).

[32] *See United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982); *United States v. Villanueva*, 408 F.3d 193, 200 (5th Cir. 2005).

[33] *See Colin*, 928 F.2d at 679; *Henao*, 652 F.2d at 593-94.

No. 11-30401

## VII

The next claim of error raised by Crook concerns the district court's exclusion of bank documents, which Crook sought to offer into evidence. We review the district court's evidentiary rulings for abuse of discretion, subject to harmless-error analysis.[34] "A trial court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence."[35] An evidentiary ruling is reversible error only if it affects the defendant's substantial rights.[36] "An error affects substantial rights only if it affected the outcome of the district court's proceedings."[37]

Crook argues that the district court erroneously excluded two bank documents, which he claims reveal that the bank forgot about the assignment of the equipment to the FSA, that the bank thought, at one time, that it had the first lien on the equipment, and that Crook believed that the bank had the first lien on the equipment. At trial, the Government objected on the grounds that Crook had not established that the documents were admissible under the business-record exception to the hearsay rule, the documents contained inadmissible third-party hearsay, and the information in the documents was irrelevant. The district court sustained the Government's objection, concluding that the documents were irrelevant because the bank's state of mind was irrelevant. On appeal, the Government renews the arguments it made below and argues that Crook was not harmed by exclusion of the evidence.

---

[34] *United States v. Jackson*, 636 F.3d 687, 692 (5th Cir. 2011).

[35] *Id.* (quoting *United States v. Yanez Sosa*, 513 F.3d 194, 200 (5th Cir. 2008)) (internal quotation marks omitted).

[36] FED. R. EVID. 103(a); *see United States v. Olguin*, 643 F.3d 384, 390 (5th Cir. 2011); *United States v. Miller*, 588 F.3d 897, 903-04 (5th Cir. 2009).

[37] *Olguin*, 643 F.3d at 390 (citing *United States v. Davis*, 487 F.3d 282, 284 (5th Cir. 2007)).

15

No. 11-30401

Although the district court based its exclusionary ruling on a clearly erroneous assessment of the evidence, the error was harmless and did not affect Crook's substantial rights. While the district court's ruling that evidence of the bank's state of mind was irrelevant was not an abuse of discretion, the documents also included statements indicating that Crook believed the bank had the first lien position. These statements are relevant because they tend to make it less probable that Crook acted with the intent to defraud;[38] Crook's defense to counts three through eight was that he lacked the intent to defraud because he acted in good-faith belief that it was within his rights to pay the proceeds from the equipment sales to the bank because he believed the bank had the first lien position.

A closer call is whether this error was harmless. On balance, we conclude that exclusion of the documents was harmless because they would have been cumulative of other evidence that was introduced to show that Crook thought the bank had the first lien position.[39] The other evidence that was introduced included testimony from Crook's farm manager, Givens, that Crook had told him that the bank had a first lien position, and the FSA had a second lien position, Crook's own testimony that he believed the bank had the first lien position and a November 2003 letter from Crook to Casey—the bank manager with whom he dealt regarding his loans—in which Crook discusses the FSA emergency loans to CPC and CFP and states that "Bank One has a first position in front of FSA with regards to the farm equipment as collateral."

---

[38] *See* FED. R. EVID. 401.

[39] *See United States v. Ramirez*, 174 F.3d 584, 590 (5th Cir. 1999) (holding that exclusion of an affidavit "was merely harmless error" because it would have been cumulative of other evidence).

No. 11-30401

## VIII

Lastly, Crook argues that insufficient evidence was admitted at trial to support his convictions. On appeal, "review of the sufficiency of the evidence is 'highly deferential to the verdict.'"[40] "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[41] "The evidence is viewed in the light most favorable to the verdict, accepting all credibility choices and reasonable inferences made by the trier of fact which tend to support the verdict."[42] "We must ensure that our inquiry is 'limited to whether the jury's verdict was reasonable, not whether we believe it to be correct.'"[43] "Finally, '[i]t is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt,' and any conflict in the evidence must be resolved in favor of the jury's verdict."[44]

## A

In light of the standard of review, a rational jury could have found the essential elements of counts one and two beyond a reasonable doubt. Counts one and two allege that Crook "knowingly made a material false statement or report for the purpose of influencing the action of the Secretary of Agriculture, acting through the [FSA], the successor to the [FHA]," in violation of 18 U.S.C. § 1014.

---

[40] *United States v. Moreno-Gonzalez*, 662 F.3d 369, 372 (5th Cir. 2011) (quoting *United States v. Harris*, 293 F.3d 863, 869 (5th Cir. 2002)).

[41] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Moreno-Gonzalez*, 662 F.3d at 372.

[42] *Moreno-Gonzalez*, 662 F.3d at 372 (quoting *United States v. Asibor*, 109 F.3d 1023, 1030 (5th Cir. 1997)) (internal quotation marks omitted).

[43] *Id.* (quoting *United States v. Williams*, 264 F.3d 561, 576 (5th Cir. 2001)).

[44] *Id.* (alteration in original) (citations omitted) (quoting *United States v. Lage*, 183 F.3d 374, 382 (5th Cir. 1999)) (citing *United States v. Duncan*, 919 F.2d 981, 990 (5th Cir. 1990)).

No. 11-30401

Count one alleges that Crook submitted a CLDAP application on behalf of CFP knowing that the application underrepresented CFP's rice production during the 1998 crop season, and count two alleges that Crook, in connection with an emergency loan for CFP, certified the rice yield on a Certification of Disaster Losses knowing that the stated yield was underrepresented.

The following evidence supporting Crook's conviction on count one was admitted at trial: (1) the CLDAP application indicating 29,106.94 hundredweight of rice production for CFP, which was signed by Crook; (2) a contract with Morehouse Rice & Grain, LLC (Morehouse) for the sale of 45,000 hundredweight of rice, which was signed by Crook on behalf of CPC; (3) the testimony of Terrell Hawkins, the operator of Morehouse at the time in question, along with exhibits, indicating that CFP actually satisfied the Morehouse contract and was paid $345,134.76 for doing so; (4) Hawkins's testimony that Crook, along with his father, picked up the check for $345,134.76; (5) the testimony of Sivils that the 45,000 hundredweight of rice was not included in the numbers on the documents; (6) Exhibit 1029, which reflects all deliveries to Morehouse; and (7) Exhibit 2, which comprises four receipts for rice warehoused at Morehouse and Kennedy Rice Dryers Inc. (Kennedy). In addition, the following evidence supporting Crook's conviction on count two was admitted at trial: (1) the Certification of Disaster Losses indicating a rice yield of 23.98 hundredweight per acre on 1,558.2 acres, which was certified by Crook on behalf of CFP; (2) the testimony of Flint, an FSA loan officer, that he reviewed the Certification of Disaster Losses with Crook before Crook signed it and that Crook agreed that it was correct; and (3) the testimony of Randall Thurman, an FSA loan manager, that CFP had an actual rice yield of 33.09 hundredweight per acre, not 23.98 as reported, which was based on his calculations including the 45,000 hundredweight of rice for the Morehouse contract.

18

A rational jury could have found that the false-statement-or-report element of § 1014 was satisfied based on the omission of the rice for the Morehouse contract, as indicated by the listed evidence. It is indisputable that the documents were submitted for the purpose of influencing the action of the Secretary of Agriculture, acting through the FSA, the successor to the FHA. Finally, viewing the evidence in the light most favorable to the verdict, a rational jury could have found that Crook acted knowingly; evidence indicated that Crook signed the documents omitting the 45,000 hundredweight of rice even though he signed the contract with Morehouse, received $345,134.76 for doing so, and personally picked up the check.

Crook argues that it would have been impossible for him to have picked up the check from Hawkins in Mer Rouge, Louisiana, because a hospital log and his testimony indicated that he was working the 7:00 AM to 7:00 PM shift in Shreveport on that day, but a rational jury could have concluded from other evidence that Crook knew that 45,000 hundredweight of rice had been sold to Morehouse.

Crook signed the Morehouse contract, and the 45,000 hundredweight of rice for the contract accounted for 51% of the combined total production for CFP and CPC. Based on Crook's involvement with the contract and the significant amount of rice involved, a rational jury could have found that Crook would have known that the numbers he provided were false. This evidence supports a rational jury's finding that the knowledge element was proven beyond a reasonable doubt. Crook's argument that he did not act knowingly because he merely relied upon numbers provided by Sivils also fails because of this evidence that he knew the numbers were false.

Crook asserts that it was not possible that all of the 45,000 hundredweight of unreported rice delivered to Morehouse came from CFP acreage. First, he argues that the Government's alleged production totals result in an impossible

rate of production for CFP when compared to CPC because all of the CFP acreage experienced disastrous conditions while the majority of the CPC acreage, which was in a different parish, did not.  Second, he argues that, if the correct production total is used, the number on the CLDAP application is not far off and the rate on the Certification of Disaster Losses actually over-reports CFP's production.  These arguments were before the jury at trial, it was the jury's obligation to resolve questions of fact, and on appeal, we are highly deferential to the jury's verdict.[45]  The jury could have resolved the actual CFP production totals in several ways—the jury could have accepted the Morehouse records on their face; the jury could have determined that, of the rice indicated as coming from CFP in the Morehouse records, only the rice shipped at 62¢ per bushel was from CFP; or the jury could have accepted Crook's concession that 32,960.92 hundredweight of the Morehouse rice was from CFP.  In all of these examples, when the receipts from Kennedy in Exhibit 2 are also considered, Crook's reported total of 29,106.94 hundredweight on the CLDAP application would have been a false underreporting, and even the factual resolution most in Crook's favor would have resulted in a rate of production higher than what Crook certified on the Certification of Disaster Losses.  Accordingly, viewing this evidence in the light most favorable to the verdict, a rational jury could have found a false statement beyond a reasonable doubt.  Because a rational jury could have found all the essential elements of counts one and two beyond a reasonable doubt, we will not disturb Crook's convictions on these counts.

## B

We also conclude that a rational jury could have found the essential elements of counts three through eight beyond a reasonable doubt.  Counts three through eight—involving 18 U.S.C. § 658—allege that Crook,

---

[45] *Moreno-Gonzalez*, 662 F.3d at 372.

with the intent to defraud the United States Secretary of Agriculture, acting through the [FSA], did knowingly conceal, remove, dispose of and convert to his own use or to that of another property in excess of $1,000, mortgaged or pledged . . . to the United States Secretary of Agriculture, acting through the [FSA].

Each count involves a separate piece of equipment. On appeal, both Crook and the Government agree that the only issue at trial was whether Crook acted with the requisite intent to defraud.

Crook's defense at trial was that he was acting within his rights to sell the equipment and give the proceeds to the bank because he thought the bank had the first lien position while the FSA had a second lien position. He claims that he was never informed that the bank assigned its first lien position to the FSA. On appeal, he argues that his convictions on counts three through eight should be overturned because the Government presented no evidence at trial to prove that he knew the FSA had the first lien position.

In concluding that there was sufficient evidence admitted at trial to support Crook's convictions on counts three through eight, we again emphasize the standard of review governing this issue on appeal; our review must be highly deferential to the verdict and we must view the evidence in the light most favorable to the verdict, accepting all credibility choices and reasonable inferences that tend to support the verdict.[46] We do not judge whether the jury's verdict was correct, only whether it was reasonable.[47]

Although the Government's evidence of intent was circumstantial, we cannot say that it was insufficient. First, the jury was presented security agreements, signed by Crook, which did not list the bank as a prior lienholder, and a rational jury could have viewed this evidence as indicating that Crook

---

[46] *Id.*

[47] *Id.*

knew the FSA would be the only secured party after the emergency loan was used to pay the bank. Second, when Crook sold the equipment he did not indicate that the FSA had a second lien, and he did not notify the FSA of the sales. Crook's defense was not that he believed the FSA had no lien when he sold the equipment, instead he claimed that he believed he was entitled to sell the equipment and tender the proceeds to the bank because the bank had a first lien position while the FSA had a second lien position. A rational jury could reject Crook's defense based on his failure to indicate the second lien and notify the FSA because it might view such actions as inconsistent with someone who believed in good faith that he was acting within his rights. A lien is something that a rational jury could expect to be disclosed, and because Crook's signature appeared on documents explaining his duty to notify the FSA of any sales, a rational jury could have concluded that he was not ignorant of his duty to notify the FSA.

Additionally, a rational jury could have viewed Crook's actions after the equipment was sold as an indication that he never in good faith believed that he had the right to sell the equipment and give all the proceeds to the bank as he claimed. After the equipment was sold, Crook thwarted the FSA's efforts to inspect the equipment by failing to respond to letters and calls from Thurman and by denying his farm manager the authority to conduct a full inspection with the FSA. A rational jury could have concluded that someone who believed in good faith that he had the right to sell the equipment would have simply told the FSA that he no longer possessed the equipment. Accordingly, we also will not disturb Crook's convictions on counts three through eight.

*    *    *

For the foregoing reasons, we AFFIRM Crook's convictions on all counts.

22