# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-51118

UNITED STATES OF AMERICA,

United States Court of Appeals
Fifth Circuit

**FILED**

November 17, 2014

Lyle W. Cayce
Clerk

Plaintiff-Appellee,

v.

FORTINO GONZALEZ-FIGUEROA,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:13-CR-159-1

Before STEWART, Chief Judge, and JONES and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Fortino Gonzalez-Figueroa ("Gonzalez") appeals his conviction and sentence for possession of counterfeit immigration documents, in violation of 18 U.S.C. § 1546(a). Gonzalez raises two issues on appeal. First, he contends that the evidence was insufficient to support his conviction because there was no direct evidence and inadequate circumstantial evidence of his guilty knowledge. Second, he avers that the district court constructively amended

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

the indictment when it granted the Government's pretrial motion to strike as surplusage the phrase "as evidence of authorized stay or employment in the United States." For the reasons stated herein, Gonzalez's conviction and sentence are AFFIRMED.

## FACTS

Gonzalez was indicted on one count of violating 18 U.S.C. § 1546(a).[1] The indictment charged,

> That on or about May 7, 2013, in the Western District of Texas, the Defendant, Fortino Gonzalez-Figueroa, did knowingly use, possess, obtain, accept and receive a counterfeit Social Security card and a counterfeit Permanent Resident Card as evidence of authorized stay or employment in the United States, which the Defendant knew to be forged, counterfeited, altered, falsely made, and unlawfully obtained. In violation of Title 18, United States Code, Section 1546(a).

Subsequent to the indictment, the Government filed a motion requesting that the phrase "as evidence of authorized stay or employment in the United States" be stricken as surplusage. Over Gonzalez's objection, the district court granted the Government's motion, finding that the phrase was merely descriptive of the types of "other [fraudulent] documents" covered under the statute.

The case proceeded to jury trial, at which the following evidence was adduced: Texas State Trooper Elena Viramontes testified that on May 7, 2013, while she was patrolling Interstate 20, she observed a white pickup truck in which neither the driver nor passenger was wearing a seatbelt. Officer Viramontes activated her overhead lights, signaling the driver to pull over.

---

[1] Section 1546(a) provides in relevant part: "Whoever knowingly . . . uses, attempts to use, possesses, obtains, accepts, or receives any such visa, permit, border crossing card, alien registration receipt card, or other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, knowing it to be forged, counterfeited, altered, or falsely made" shall be fined and/or imprisoned.

Although the driver slowed, he did not immediately pull over and bypassed an exit. The driver's failure to pull off at the exit aroused Officer Viramontes's suspicion, as in her experience, most people immediately pulled over when signaled to do so. Just as she began to fear that the traffic stop was turning into a pursuit, the truck stopped.

When Officer Viramontes directed the driver, Gonzalez, to exit his vehicle, she observed that he was very nervous. She noticed that his hands were shaking, his carotid artery was visibly palpitating, and he was unable to stand still. Officer Viramontes asked Gonzalez to produce his driver's license to which he replied that it was in the truck. Gonzalez began to walk back to his truck to retrieve his license, but the officer stopped him for safety reasons. Instead, Officer Viramontes walked around to the passenger side of the vehicle and asked Gonzalez's passenger to look for the license. When the passenger looked in the glove compartment for Gonzalez's license, Officer Viramontes noticed some identification cards. She asked the passenger to hand the cards to her, and she noticed that the cards purported to be Resident Alien and Social Security cards but that none matched Gonzalez. When Officer Viramontes returned to Gonzalez to ask him about the cards, he produced his driver's license, which had been on his person during the entire encounter. Officer Viramontes observed that Gonzalez also began to perspire, which, along with his lying about not having his driver's license, increased her suspicion.

Gonzalez admitted knowing that the identification cards were in his glove compartment but denied owning them, explaining that he frequently gave rides to people and that they often left things in his truck. Believing that the cards were counterfeit, Officer Viramontes requested Gonzalez's consent to search his truck, which he gave. When she looked in the glove compartment, Officer Viramontes found a group of identification cards stacked together on

top of other paperwork, ultimately uncovering a total of nine Resident Alien cards and nine Social Security cards. She arrested Gonzalez, confiscated the cards, and referred the case to Immigration and Customs Enforcement ("ICE"). The entirety of the stop was recorded on videotape by a camera on the patrol vehicle, and the videotape was played for the jury.

In addition to hearing the testimony of the arresting officer, the jury heard the testimony of ICE Special Agent Christopher Knight. Special Agent Knight explained why the cards were counterfeit.[2] He also explained that Resident Alien cards evidence a right to stay in the United States and could be used by the holder to obtain legal employment, as could Social Security cards.

Gonzalez testified in his own defense, explaining that he was nervous when stopped but no more so than at any other time he had been pulled over for a traffic violation. He acknowledged that he knew the identification cards had been in his truck for four or five years, left by various people to whom he had given rides, but stated that he had no idea that they were fake. He conceded that the cards were very valuable but explained that he took no steps to return them because he did not know who had left them.

After receiving all of the evidence, the jury found Gonzalez guilty. He was sentenced to seven months of imprisonment, followed by a three-year term of supervised release. He timely appealed.

## DISCUSSION

### A. Sufficiency of the Evidence

Gonzalez first argues that the evidence was insufficient to support his conviction. He stipulated that the cards were counterfeit and in his possession. Therefore, the only issue on appeal is whether there was sufficient evidence to

---

[2] This explanation was given after the jury was made aware that the parties stipulated to the fact that the cards found in the glove compartment of Gonzalez's truck were counterfeit.

support that he knew that the Alien Registration and Social Security cards found in his truck were counterfeit. We conclude that there was.

Because he moved for a judgment of acquittal at the close of the Government's case and at the close of all of the evidence, his insufficiency-of-the-evidence challenge is reviewed de novo. *United States v. Grant*, 683 F.3d 639, 642 (5th Cir. 2012). When reviewing the sufficiency of the evidence, a court must determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Moreno-Gonzalez*, 662 F.3d 369, 372 (5th Cir. 2011) (internal quotation marks and citation omitted). Evidence must be viewed "in the light most favorable to the verdict." *Id.* (internal quotation marks and citation omitted). Moreover, the court must "accept[] all credibility choices and reasonable inferences made by the trier of fact which tend to support the verdict." *Id.* (internal quotation marks and citation omitted).

Gonzalez acknowledges that in the absence of direct evidence, his guilty knowledge may be proved by circumstantial evidence. Nonetheless, he contends that the circumstantial evidence presented at trial was insufficient to prove the requisite knowledge given that he gave a consistent account of how he came to be in possession of the documents, the documents were not obvious forgeries, and he did not exhibit furtive conduct. He also asserts that though he was nervous during the traffic stop, nervousness standing alone is not enough to support a finding of guilty knowledge. In a similar vein, he argues that an implausible story alone is insufficient to support his conviction.

While it may be true that these pieces of circumstantial evidence, standing alone, are insufficient to prove knowledge, it is well settled that a combination of such evidence is sufficient to prove knowledge. *See United States v. Mudd*, 685 F.3d 473, 478 (5th Cir. 2012) (finding a defendant's

implausible story to investigating officers coupled with other evidence was sufficient evidence of guilty knowledge); *United States v. Crooks*, 83 F.3d 103, 107 (5th Cir. 1996) (stating that a defendant's nervousness, in combination with other factors, can be circumstantial evidence of guilty knowledge); *United States v. Casilla*, 20 F.3d 600, 606 (5th Cir. 1994) (concluding that evidence that a defendant's story was "less than credible" was circumstantial evidence of his guilty knowledge).

Here, the trial record contains substantial evidence indicating that Gonzalez was aware that the immigration documents in his glove compartment were forged, including the following:  his initial refusal to pull over for Officer Viramontes, his extreme nervousness when questioned, and the implausible story he gave officers about how he came into possession of the 18 counterfeit cards, as well as the testimony indicating that the cards were obvious forgeries.  Accordingly, viewing the evidence in the light most favorable to the verdict, we hold that the evidence presented was sufficient for a rational jury to find the requisite guilty knowledge.  *See Moreno-Gonzalez*, 662 F.3d at 372.

### B. Constructive Amendment of the Indictment

Gonzalez next contends that the district court amended the indictment over his objection when it granted the Government's pretrial motion to strike as surplusage the phrase "as evidence of authorized stay or employment in the United States."  He asserts that the stricken language stated an essential element of the offense and that the omission of the language from the jury charge improperly relieved the Government of its burden of proof.  We review a claim of constructive amendment de novo.  *United States v. Jara-Favela*, 686 F.3d 289, 299 (5th Cir. 2012).

"The Fifth Amendment guarantees that a criminal defendant will be tried only on charges alleged in a grand jury indictment." *United States v. Arlen*, 947 F.2d 139, 144 (5th Cir. 1991). Only the grand jury can broaden or alter an indictment. *Id.* Thus, a jury instruction that constructively amends a grand jury indictment violates the defendant's constitutional right to be tried only on those charges presented in a grand jury indictment. *See Stirone v. United States*, 361 U.S. 212, 217–18 (1960).

A constructive amendment to an indictment "occurs when the jury is permitted to convict the defendant upon a factual basis that effectively modifies an essential element of the crime charged." *United States v. Robles-Vertiz*, 155 F.3d 725, 728 (5th Cir. 1998) (internal quotation and citation omitted). In evaluating whether a constructive amendment has occurred, this court considers "whether the jury instruction, taken as a whole, is a correct statement of the law and whether it clearly instructs jurors as to the principles of the law applicable to the factual issues confronting them." *Jara-Favela*, 686 F.3d at 299–300 (internal quotation marks and citation omitted). "The key inquiry is whether the defendant was convicted of the same conduct for which he was indicted." *Robles-Vertiz*, 155 F.3d at 729. If a constructive amendment has occurred, we must reverse the conviction. *See United States v. Ramirez*, 670 F.2d 27, 28–29 (5th Cir. 1982) ("It is reversible error per se to amend an indictment without resubmission to the grand jury, if it is possible that the accused will be tried and convicted of a crime other than that alleged in the indictment.").

Not all amendments to the indictment require reversal. *See United States v. Miller*, 471 U.S. 130, 144 (1985) (rejecting the proposition that eliminating unnecessary allegations from the indictment constitutes an unconstitutional amendment). Indeed, "[a] part of the indictment unnecessary

to and independent of the allegations of the offense proved may normally be treated as a useless averment that may be ignored." *Id.* at 136 (internal quotations and citation omitted); *see also United States v. Wylie*, 919 F.2d 969, 973 (5th Cir. 1990) ("Permissible amendments are those that do not alter the charges against an accused . . . .").

In light of these governing principles, we hold that the indictment was not constructively amended. Under the law of this circuit, the Government was required to prove "(1) knowing possession of (2) false [immigration] documents (3) that are known by the possessor to be false." *United States v. Uvalle-Patricio*, 478 F.3d 699, 702 (5th Cir. 2007); *see also United States v. Principe*, 203 F.3d 849, 853 (5th Cir. 2000) (reciting with approval the § 1546(a) elements as requiring "(1) That the defendant knowingly possessed an Immigration Naturalization Service alien registration receipt card; (2) That the document was counterfeited; and (3) That the defendant knew at the time of the possession that the document had been forged [sic] counterfeited."). These essential elements were in the instructions given to the jury.[3] Moreover, as a factual matter, the jury charge contained the challenged phrase twice, including in the description of the offense charged, which contained a verbatim recitation of the original indictment. Furthermore, the charge instructed the jury that Permanent Resident Cards and Social Security Cards qualify as documents "required for entry into or as evidence of an authorized stay or employment in the United States."[4]

---

[3] Specifically, the charge listed the elements that the Government was required to prove beyond a reasonable doubt as (1) "That the defendant knowingly possessed one or more Social Security Cards or Permanent Resident Cards; (2) That one or more of the Social Security Cards or Permanent Resident Cards had been forged, counterfeited, or falsely made; and (3) That the defendant knew that one or more of the Social Security Cards or Permanent Resident Cards had been forged, counterfeited, altered, or falsely made."

[4] This was a correct statement of law as both Social Security Cards and Resident Alien Cards are prescribed by statute as evidence of authorized stay or employment in the United

No. 13-51118

Finally, under the "key inquiry," Gonzalez was convicted of the same conduct for which he was indicted. *See Robles-Vertiz*, 155 F.3d at 729. He was originally indicted for knowingly possessing a counterfeit Social Security Card and a counterfeit Permanent Resident Card, both of which he knew to be counterfeit. Based on evidence presented at trial and the correct statement of the law provided in the jury instructions, the jury returned a verdict of guilty, convicting him of the same conduct. For this and the abovementioned reasons, there was no constructive amendment.

## CONCLUSION

The district court's judgment is AFFIRMED.

---

States. *See* 8 U.S.C. § 1324a(b)(1)(B)(ii), (C)(i); *see also United States v. Galindo*, 543 F. App'x 862, 866 & n.6 (10th Cir. 2013) (holding, in a § 1546(a) case, that the question of whether immigration documents, including Social Security cards, were evidence of authorized stay or employment is a legal question for the court, not a factual issue for the jury, and determining that a Social Security card alone is sufficient proof of authorization to be present or employed in the United States). Additionally, Special Agent Knight specifically testified that Social Security cards and Resident Alien cards authorized employment or stay in the United States.